## PEOPLE v. GAGE.

1. CRIMINAL LAW—JURY—PANEL—VENUE—COURTS.
   Under the provisions of statute relating to the summoning of additional jurors, more than 24 petit jurors being needed for a criminal trial, in the opinion of the presiding judge, the court is not permitted to designate prior to the commencement of the term a portion of the county from which the additional jurors should be selected, excluding the city in which the alleged offense took place and certain adjacent territory. 1 Comp. Laws, §§ 340, 342. The accused is entitled to a trial by a jury of the vicinage or locus of the crime with which he was charged, and

failure to recognize this right invaded the constitutional privilege of the said respondent.

2. SAME—CHANGE OF VENUE—DISCRETION—PREJUDICE.

The discretionary power vested in the circuit judge to allow or deny a change of venue is only reversible on appeal in case of abuse, but the discretion recognized by the court is not a personal, arbitrary discretion, being rather a legal discretion to be exercised according to established and well known principles of law.

3. SAME—VENUE—PREJUDICE—CHANGE.

Defendant was informed against for embezzlement and illegal conduct in the operation and failure of a private bank. The failure of the bank caused much excitement and public feeling. Various litigation arose over the firm affairs. On the hearing of a motion for change of venue, the trial court granted the request, but the cause coming on at a subsequent term, the order being treated as premature and irregular, a second motion was made and denied by the judge, who was of the opinion that sufficient time had elapsed so that public feeling and interest was less intense, and that a fair trial could be secured in the county. But during the intervening period political discussion took place regarding the bank failure and the evidence showed that the issues were kept alive and agitated. *Held*, that a change of venue should be granted, and it was error to find that sentiment had so changed in the county as to afford an opportunity for an impartial trial.

Exceptions before sentence from Cass; Des Voignes, J. Submitted June 17, 1915. (Docket No. 101.) Decided December 21, 1915.

Ira B. Gage was convicted of embezzlement and conspiracy to defraud. Reversed.

*Grant Fellows*, Attorney General, and *Otis Huff*, Prosecuting Attorney, for the people.

*James H. Kinnane* and *Clyde W. Ketcham*, for respondent.

STEERE, J. This case developed from the failure of a private bank in the city of Dowagiac, known as the

City Bank of Dowagiac, Lyle, Gage & Co., bankers,
which closed its doors in February, 1908. The part-
nership, with its members as such, filed petitions and
schedules in bankruptcy, and were adjudged bankrupt.
in March, 1908, resulting in the losses to depositors,
financial disturbances, and unfriendly feeling toward
those actively connected with the bank, locally incident
to such an event.

Frank W. Lyle and respondent, respectively presi-
dent and cashier of said bank, were arrested in April,
1908, upon complaint of Oliver Lyle, one of the part-
ners, charged with embezzlement and conspiracy to
defraud and deceive said Oliver Lyle, Levi Lyle, an-
other partner, and the bank depositors generally, and
were held for trial in the circuit court of Cass county.

A bank of similar name and controlling ownership
had existed in Dowagiac for many years. Complain-
ant Oliver Lyle testified that he had been connected
with this bank as a stockholder under different organ-
izations for over 30 years, it having been originally
organized as a national bank, in which he was a di-
rector when Frank Lyle's father had principal charge.
This was followed by a private bank for a time, and
in 1900 it was incorporated and organized as a State
bank, called the City Bank of Dowagiac, continuing in
business in that capacity until May, 1904, when it
abandoned its corporate form and was reorganized as
a private bank in the form of a partnership, owing to
trouble with the State banking department over exces-
sive loans made to its president, Frank Lyle, and oth-
ers, not satisfactory to the department, which were in
violation of the banking law. The undisputed testi-
mony discloses that this course was taken at the sug-
gestion of the State bank commissioner, who went to
Dowagiac about that time to investigate the matter,
and while there stated to the bank officials that this
was a legal and feasible plan, which he had himself

once followed when in the banking business in the north, and when so organized they would be free to extend their loans and lines of credit in their discretion. Respondent was then and continued to be cashier of the bank. The stockholders met to reorganize on May 2, 1902, and he is convicted of having conspired on that date with Frank Lyle to defraud Oliver Lyle, Levi Lyle, and others. That Frank Lyle was the controlling spirit in the policy and management of this bank, and his reckless management, private ventures, and extravagance were the dominant cause of its downfall may be admitted as beyond successful contradiction; but respondent, who was the cashier under him and presumably familiar with the bank's condition, was himself a liberal borrower, and from what is disclosed by this voluminous record we think there was testimony raising an issue as to his guilty participation which it was proper to submit for the determination of a fair and impartial jury, legally constituted, and cannot concur in defendant's contention that as a matter of law a verdict should have been directed for defendant on the ground there was not a scintilla of evidence to go to the jury on the issue of his guilt.

The case came before this court in a preliminary proceeding brought by said Frank W. Lyle and respondent for the purpose of compelling the circuit court to grant a change of venue on a motion previously made before it and denied. *Lyle* v. *Circuit Judge*, 157 Mich. 33 (121 N. W. 306). The writ applied for was then denied on the ground that such interlocutory order will not be reviewed and a change of venue compelled on mandamus as such cases, involving discretionary action, are reviewable upon writ of error; it being said, however, by the justice who wrote the opinion:

"Were it competent for us to review his conclusion upon the merits, I should reach a different conclusion from his, but I think that it is not."

Frank W. Lyle died before the case was brought to trial. The motion for a change of venue was renewed and again denied at the opening of the trial, to which exception was duly taken and the ruling embodied in the bill of exceptions now before us for review.

Respondent was tried and convicted at the September, 1909, term of the circuit court of Cass county, under three of the 17 counts in the information filed against him of having, on May 2, 1904, conspired with one Frank W. Lyle to defraud, as before stated. Prior to the commencement of that term, on August 10, 1909, an order was made by the circuit judge directing that 40 additional petit jurors be drawn and summoned from the several lists returned according to law, "excepting the townships of Pokagon, Silver Creek, Wayne, and the city of Dowagiac." The order began as follows:

"It appearing that in the case of *People* v. *Ira B. Gage* and certain other cases to be heard in the next September term of the court, that the usual number of jurors will not be adequate out of which a jury may be selected for the several trials therein, because of the number of challenges that may be, and probably will be, exercised in said causes," etc.

It was further stated by the court during the argument of plaintiff's challenge to the array that said exclusion of the territory named was based on the motion first made for change of venue and was, "if anything, in favor of defendant, to avoid the bringing in of people who lived near the city of Dowagiac," the townships excluded being adjacent thereto.

When impaneling of a jury was directed at the commencement of the trial and 12 jurors had been called to the box, defendant's counsel interposed a challenge to the array for various reasons, but principally on the ground that the city of Dowagiac and townships excluded from said drawing represented approximately one-third of the population of the county, and

the order excluding them, but directing a drawing of jurors from the balance of the county was without authority of law and prejudicial to respondent, said jurors having been irregularly and illegally summoned, by which respondent was deprived of his constitutional right to a trial by a jury lawfully drawn and summoned from the body of the county, including the vicinage, according to the methods provided by statute for that purpose.

The order as made was not authorized by any statutory provision, nor within the power of the court. The jury so drawn was neither a jury of the vicinage nor of the county at large. The provision in section 342, 1 Comp. Laws, permitting the court as such to direct that jurors be drawn and summoned from near the county seat for convenience and the dispatch of business, after it is ascertained at a particular term that a sufficient number of qualified jurors were not drawn and summoned, or failed to appear, is not applicable under any circumstances to an order of this nature made by the circuit judge prior to the commencement of a term. This order was apparently made with reference to sections 340 and 341, which authorize the circuit judge, whenever in his opinion more than 24 jurors will be necessary for an approaching term, to make an order that such additional number as he deems necessary be drawn and summoned as provided by law, not exceeding 24, which order he must serve on and file with the county clerk at least 20 days before the commencement of the term; but these sections confer no authority to designate any portion of the county from which the jurors shall be drawn or to otherwise restrict the regularly prescribed manner of drawing and summoning. The order was therefore not sanctioned by law. *People* v. *Hall*, 48 Mich. 482 (12 N. W. 665, 42 Am. Rep. 477). The course pursued, as well as what was said by the court

in that connection, indicate that the order as made was a partial recognition at least of the merits of respondent's motion for a change of venue, in the particular that it attempted to effect a semi-change of venue by picking out that portion of the county to draw from which the court was inclined to think might be less affected by the feeling and prejudice shown in affidavits presented in support of the motion.

The record discloses that a motion for change of venue was early made and presented to the court in this case at a time when the judge of a neighboring circuit was presiding in Cass county, and an order was then granted changing the venue to Kalamazoo county. It was subsequently found and held that this order and the motion upon which it was based were premature, the case not then being at issue, for which reason the same was set aside, and the application was later renewed in proper form and time when the regular judge of the circuit was presiding. In then denying this motion the court conceded the propriety of the former order granting a change of venue, but prematurely made, saying in part that the incidents of the "somewhat sensational bank failure" were then fresh in the public mind, and "at that time it appeared, and quite reasonably so, that owing to the then condition of the public mind, it was proper to grant the prayer of respondent," but denied the motion on the ground that sufficient time had elapsed to cause the incident to pass from the minds of the people.

It is pointed out that to grant a change of venue is discretionary with the trial court; that courts of review will not disturb the action of trial courts in the exercise of such discretion except in cases of plain abuse, and it is urged that no abuse of discretion appears here. That the rule is as stated there can be no question, and this court has often so held, but in that

188 Mich.—41.

connection is the further rule that the discretion lodged in the trial court is not a private, arbitrary, or personal, but a legal, discretion, to be exercised according to established and well-known principles of law. The extent to which discretionary action may be reviewed was long ago well stated in 1 Lill. Abr. 477, as follows:

"Where anything is left to any person to be done according to his discretion, the law intends it must be done with sound discretion and according to law; and the Court of B. R. hath a power to redress things that are otherwise done, notwithstanding they are left to the discretion of those that do them."

This bank closed its doors in February, and was adjudicated a bankrupt in March, 1908. The premature order changing the venue of this case on the showing then presented was made June 22, 1908, by the Calhoun circuit judge then sitting in Cass county. In December, after the case was at issue, the motion was renewed. At the January term, 1909, it was argued before the regular judge of the Cass circuit, then presiding, who concurred with the opinion of the visiting judge that a change of venue was proper at the time it was ordered in June, 1908, but, with 25 affidavits in support of the motion added to the 12 upon which the former judge acted, denied the motion on the ground that by lapse of time excitement and prejudice had abated, the incident had passed from the minds of the people and previously existing reasons for a change of venue no longer obtained. This might be true to a greater degree had nothing occurred between June and January to refresh their recollections, although, had public discussion ceased, it could scarcely be thought to have passed from the minds of the many unpaid depositors of the bank scattered throughout the county, stated at from 800 to 1,000, and their friends, of whom, commenting on this matter, a local paper said:

"A great many citizens whose bank account is gone, would like the pleasure of hearing Lyle and Gage tried; that's about all they will ever get out of it."

The atmosphere of a courtroom packed with those citizens does not suggest an ideal venue for a fair and impartial trial on its merits of the cashier of that bank, irrespective of his guilt or innocence.

While the affidavits in support of and against this motion are at variance as to whether in the opinion of those making them such prejudice generally prevailed in the county as to preclude a fair and impartial trial, certain undisputed facts of permanent significance demand consideration. This prosecution centers upon the incidents of a "somewhat sensational bank failure," causing serious loss to some 800 or 1,000 depositors, attended and followed by public manifestations, ill feeling, and bitter discussion, both amongst citizens generally and in the public press, unfavorable to the bank and its officers so widespread and of such a nature that it was conceded by the prosecution prejudice prevailed for a time, and all courts called upon to consider the matter have concurred in the view that following the failure and up to June 22d the hostile feeling and prejudice against respondent in that county were such that for a fair and impartial trial a change of venue should be granted. An examination of the sensational accounts and severe criticisms of the affairs and management of the broken bank appearing in the local papers, with charges of criminal conduct on the part of its officers, together with affidavits of admittedly prominent and reliable citizens as to what was said and done, leaves no doubt upon that proposition.

It also appears, undisputed, that after June 22d, and at least up to the November election following, general interest was kept alive in the bank failure and this prosecution, which grew out of it, to such an extent that the case became one of the issues of the fall political campaign of 1908, and was generally discussed as a matter of public concern before the electors

of the county in that connection. The voters were appealed to against the "bank gang," and the defense of this case was bitterly attacked in public print, it being asserted amongst other things that "it would cost $5,000 to convict Lyle and Gage outside of Cass county." On the eve of election circulars or dodgers relating to the case were distributed by the then prosecuting attorney, and the public was assured that Lyle and Gage could be convicted at home for less than $500. The campaign discussion of this particular case became so personal, bitter, and acrimonious as to result in the commencement of a libel and slander suit involving attorneys connected with it, which furnished sensational copy for the local papers.

One prerequisite to entering upon a judicial trial, and paramount to the requisites which follow, is impartiality or freedom from prejudice so far as attainable, and if it appears this may not be found in the venue of first jurisdiction it is the duty of the court to seek it elsewhere, and the legal discretion existing in that connection may involve an inevitable legal inference from the undisputed facts.

We are agreed that under undisputed local conditions the fundamental prerequisites to a fair and impartial judicial trial demanded a transfer of this case to a disinterested and unaffected environment, and denial of the application therefor was prejudicial error resulting in a mistrial and consequently amounting, in contemplation of law as applied to judicial proceedings, to a miscarriage of justice.

The verdict is therefore set aside, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred. MOORE, J., did not sit.

The late Justice MCALVAY took no part in this decision.