JACOBS *v.* HAGENBECK-WALLACE SHOWS.

1. APPEAL AND ERROR—PRESUMPTIONS—CHANGE OF VENUE—DISCRETION OF COURT.

In an action to recover damages for personal injuries sustained by a patron of defendant's show, as a result of a windstorm upon the show tent, while plaintiff was attending the show, where a jury was secured without difficulty, and the damages awarded were not claimed to be excessive, *held*, that there was no inevitable legal inference from undisputed facts that local prejudice existed or that the court below abused judicial discretion in denying motion for a change of venue.

2. THEATRES AND SHOWS—DAMAGES—NEGLIGENCE—BASIS OF ACTION.

Negligence is the gravamen of an action to recover damages for personal injuries sustained by one attending a show in a tent by the effect upon the tent of a windstorm, although the declaration alleges as inducements to plaintiff to enter the tent an advertisement circulated by the defendant to the effect that the tent was storm-proof and wind-proof and also that plaintiff paid the price of admission asked by the defendant.

3. SAME—DUTY OF PROPRIETORS.

Proprietors of public entertainments are not insurers of the safety of patrons, but must exercise, to prevent disaster, care commensurate to the situation.

4. SAME.

That in the latitude where defendant erected its show tent summer storms with wind and rain were common, that the wind often attained considerable velocity and did considerable injury, and that such storms often arrived or broke suddenly and were as soon gone, were circumstances to be considered by defendant in erecting the tent and by the patrons of the show in attending.

5. SAME—DAMAGES—EVIDENCE—QUESTION FOR JURY.

Whether the facts upon which the defendant's liability depends were established, held, to be for the jury.

6. TRIAL—INSTRUCTIONS—CONSTRUCTION OF CHARGE TO JURY.

The charge of the court must be read as a whole and with regard to the contentions of the parties.

7. THEATRES AND SHOWS—DUTY OF PROPRIETORS—RIGHTS OF PATRONS.

The proprietor of a show tent is bound to anticipate, in selecting and erecting the tent, the ordinary and usual storm of the season and latitude and its probable consequences, reference being had to the character of the structure to which the public was invited, and, in view of such storm arising and such consequences, to use ordinary care in such selection and erection as to prevent injury to patrons.

8. SAME.

In an action by a patron of a tent show to recover for personal injuries sustained as the result of a sudden windstorm while plaintiff was attending defendant's show, if, as claimed by plaintiff, the storm was an ordinary one, and, as claimed by defendant, the tent was selected and erected with ordinary care, in view of probable storms arising and their consequences, there was no duty on the part of defendant to warn its audience of the approach of the storm.

9. SAME.

The proprietor of a show tent who does not use ordinary care in the selection and erection of the tent, as the result of which a patron is injured in a storm, is liable

unless the storm was so violent in character that whether defendant was or was not negligent in such selection and erection the result would have been the same.

10. SAME—"ACT OF GOD"—INSTRUCTIONS.

An instruction that, "as applied to this case, an act of God may be defined as a natural cause, such as a storm of wind, whatever its characteristics may be, which cannot be prevented by the exercise of ordinary care and the use of those appliances which the situation of the party renders it reasonable that he should employ," was not erroneous.

11. SAME.

An instruction that defendant was not required to contemplate or provide against unusual or extraordinary storms, was proper as preferred without the addition that the storm was of such a character that human care and foresight could not anticipate or guard against it.

12. SAME—INSTRUCTIONS—BURDEN OF PROOF.

An instruction that the burden was upon defendant to show that the storm was so violent that it was the sole proximate cause of plaintiff's injuries was erroneous, as plaintiff had the burden upon the whole case to prove defendant's negligence was the proximate cause of such injuries.

13. SAME.

An instruction that as defendant presumably knew the actual condition of the tent it was its duty to warn its audience of the approach of the storm, was not erroneous.

14. EVIDENCE—MATERIALITY—MORTALITY TABLES—INSTRUCTIONS—HARMLESS ERROR.

The admission in evidence of tables of mortality showing plaintiff's expectancy of life, was harmless error, where there was evidence tending to show that such injuries were permanent and his physical condition, and the jury were instructed not to consider the tables unless they were convinced to a moral certainty that a permanent injury was received.

15. SAME—OPINION EVIDENCE—ADMISSIBILITY—EXPERT WITNESSES.

The admission, in an action for personal injuries received by a patron of a show in a tent, of opinion evidence tending to show that the stakes of the show tent should not have been driven vertically, at right angles with the

earth, and should have been driven at another angle, given by witnesses not shown to have had any experience in securing such tents to the earth, was erroneous.

16. Same—Admissions—Appeal and Error.

The admission of testimony tending to prove that either before or after a certain storm from the effects of which upon defendant's tent in which plaintiff was attending defendant's show plaintiff was injured, certain employees of defendant admitted that the tent was not properly erected or made statements from which the inference of defendant's negligence would arise, was erroneous; otherwise, if at any time responsible officers and agents of defendant made such admissions.[1]

Error to St. Joseph; Knowlen, J. Submitted April 20, 1917. (Docket No. 145.) Decided September 27, 1917.

Case by Alpha Jacobs, administrator of the estate of Crebillion Jacobs, deceased, against the Hagenbeck-Wallace Shows for personal injuries to plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Roy H. Hagerman, George L. Yaple, Henry R. Wair,* and *Victor M. Gore,* for appellant.

*Theo. T. Jacobs* and *Harry C. Howard,* for appellee.

Defendant's circus exhibited at Sturgis, Mich., August 13, 1914. There was a storm during the afternoon performance. It was of short duration, and was accompanied by a high wind. Testimony tends to prove that the wind, getting under the top of the large tent, inflated and deflated it, caused it to rise and fall, the action of the canvas pulled from the ground stakes to which the circumference of the tent was fastened,

---

[1]On liability of one maintaining place of amusement to which the public is invited, for the safety of patrons visiting the premises, see notes in 1 L. R. A. (N. S.) 427; 3 L. R. A. (N. S.) 1132; 14 L. R. A. (N. S.) 284; 19 L. R. A. (N. S.) 772; 32 L. R. A. (N. S.) 713; 42 L. R. A. (N. S.) 1070; L. R. A. 1915F, 690.

and some of these stakes, attached to ropes, came into the tent over the side walls, and were whipped about, over and among a portion of the audience. Poles inside the tent supporting the top were some of them lifted from the earth, and they performed evolutions dangerous to persons in their vicinity. Several persons, including Crebillion Jacobs, were injured; one was killed.

The plaintiff, seeking to recover damages for his injuries, charges defendant with negligent conduct— action and want of action—which he contends was the proximate cause thereof. His position is fairly denoted in the second count of the declaration where, in negativing the due performance by defendant of duties alleged, it is averred:

"Defendant failed to observe for his protection such care and diligence as the circumstances justly demanded, and contends that the tent in which he was, its supports and fastenings were defective in construction, and was not capable, and did not stand the strain and tension that might reasonably be expected. That the top of the tent was not of such material as was capable of sustaining the strain and tension that plaintiff had reason to believe that defendant would have constructed the same. That the stakes to which the supports and ropes of the tent were fastened, were not of the proper size, kind, and dimensions; and that said stakes were not properly driven, and were not driven the proper depth or the angle that a reasonable man would drive them for the purpose of properly securing or anchoring the fastenings and supports for the tent which plaintiff occupied; that said tent was not wind and rain proof according to the statement in defendant's magazines or circulars, as plaintiff had a right to believe after reading said circular or magazine; and that said defendant through its agents, officers, and directors, did not warn plaintiff that a storm was approaching, which might affect the safety of the tent occupied by plaintiff; but said defendant, well knowing the manner in which said tent had been erected and well knowing the depth and

angle that the stakes were driven, to which the supports or fastenings were anchored, failed to advise plaintiff of the approaching storm. That, well knowing this and the condition of said tent, it became the duty and was the duty to warn plaintiff of the approach of the storm so that he might retire from said tent and go to a place of safety. That instead of warning plaintiff of the approach of the storm, well knowing that plaintiff on account of said tent being entirely inclosed could not see the approach of the storm, said defendant through its officers, agents, and employees, told plaintiff, after the tent had become loosened by its pulling up the stakes, and the poles and stakes inside of the tent were being lifted from the ground, that plaintiff should remain seated, and that there was no danger, and he was entirely safe in remaining in his seat and commanded him to do so."

With the plea of the general issue defendant gave notice that it would prove that the injuries claimed to have been suffered by plaintiff were caused by an act of God. As stated by the trial court in his charge to the jury, the specifications of negligence set out in the declaration and concerning which testimony was offered were:

"(1) That the canvas material of the tent was defective and unfit and unsuitable for the purpose in that it was old, worn, and rotten; that it had holes in it, and was not capable of sustaining the strain to which it might reasonably be subjected; (2) that some of the stakes to which supporting ropes were fastened or attached were not driven to a proper depth; (3) that the stakes to which supporting ropes were attached or fastened were not properly driven, in that they were driven straight rather than on a slant; (4) that said stakes were not properly pointed, in that they were too blunt in point; (5) that some of the alternate ropes were not fastened, or properly fastened, to the alternate stakes provided therefor.

"These particulars, gentlemen, are the only particulars in respect to defendant's negligence in failing to provide a reasonably fit, suitable, and safe tent charged by the plaintiff, and you will consider no others."

In addition, plaintiff charged, as has been indicated, negligent failure to warn the audience of the approach and apparent character of the storm.   In his brief, plaintiff says:

"The contention in behalf of the plaintiff was that he was entitled to recover because of defendant's negligence: (*a*) In failing to tie every alternate rope; (*b*) in failing to drive the stakes deep enough; (*c*) in failing to warn him of the approach of the storm."

The cause being at issue, the defendant moved for a change of venue, upon the ground of local prejudice, asserting inability to obtain a fair trial in St. Joseph county, supporting the motion by numerous affidavits. This motion being overruled, there was a trial, a verdict and judgment for plaintiff, and denial of defendant's motion for a new trial.   The assignment of error No. 126 and the questions involved are stated by defendant to be:

"I. The refusal of the court to direct a verdict for defendant when the plaintiff rested, because: (*a*) That the declaration fails to state a cause of action; (*b*) no negligence was proven on the part of the defendant which was the efficient or proximate cause of plaintiff's injury; (*c*) that it appeared from the undisputed evidence that the proximate cause of plaintiff's injury was an act of God; (*d*) there is no proof as to how or in what manner or by what means the plaintiff was injured.

"II. The refusal of the court to direct a verdict as requested by defendant when both parties had rested.

"III. The court erred in refusing to charge the jury as the defendant requested in its written requests Nos. 21 to 31, inclusive.

"IV. The refusal of the court to charge the jury as requested in defendant's requests Nos. 32, 36*a*, and 37*a*.

"V. The ruling of the court in refusing to charge the jury as requested by the defendant in its requests Nos. 40 to 45, inclusive.

"VI. The ruling of the court in denying the defendant's motion to change the venue.

"VII. The refusal of the court to set the verdict aside and grant a new trial.

"VIII. The instructions of the court in his voluntary charge to the jury.

"IX. The rulings of the court upon the admissibility of testimony.

"X. The prejudicial language of plaintiff's counsel in his closing arguments to the jury seasonably objected to."

One, and perhaps the principal, ground set up as a reason for granting a new trial was that the verdict was against the weight of evidence.

If there was a question for the jury, then, it is claimed, it was error to instruct them, as they were instructed:

"The burden is upon the plaintiff to prove, and in order to recover he must prove by a preponderance of the evidence, either that defendant's alleged negligence was the proximate cause of the injury, or that the injury was in part the result of the act of God and in part the alleged negligence of the defendant, and that such injury was a reasonable direct consequence of such negligence. If plaintiff has not so proved he cannot recover, and your verdict must be for defendant.

"The burden is upon the defendant, gentlemen, to prove by a preponderance of the evidence its claim that the act of God was the sole and only proximate cause of the injury."

In immediate connection with, and preceding the foregoing, the court said:

"The principle of law, gentlemen, is well-settled that in order for a negligent defendant to escape liability the act of God must be the sole and only cause of the injury, and this, too, unmixed with the negligence of such defendant, for, if a defendant's negligence commingles with the act of God in the injury as an active and co-operative element, and the injury is a reasonable consequence of the negligence, such injury is regarded as the act of such defendant rather than as an act of God; and the rule of law is equally well settled that a defendant can be excused for failure to exercise.

ordinary care only when the superior force of an act of God would have produced the same injury whether such defendant had been negligent or not. And I therefore charge you, gentlemen, that if you find by a preponderance of the evidence that this storm was in fact so unusual and extraordinary in character and power that by the exercise by defendant of ordinary care, prudence, and foresight such storm could not have been reasonably anticipated or guarded against, and if, by a preponderance of evidence, you further find that such storm was the sole, exclusively proximate cause of the injury, and that such injury would have occurred without regard to and notwithstanding defendant's alleged negligence, then I charge you that this would be a complete defense to plaintiff's action, and the defendant would be entitled to your verdict.

"If you find, gentlemen, by a preponderance of the evidence, that the storm was in fact so unusual and extraordinary in character and destructiveness that by the exercise by defendant of ordinary care, prudence, and foresight it could not have been reasonably anticipated or provided for, and if you further find by a preponderance of the evidence that the injury was in part the result of plaintiff's negligence and in part the result of the storm, and that the injury was a reasonable consequence of such negligence as an acting, co-operative, contributing cause of such injury, then I charge you that the defendant cannot be heard to say that such injury was an act of God, and cannot escape liability for its alleged negligence."

Error is assigned upon the last paragraph here quoted.

As the record is understood, the defendant's main tent or "big top" was 360 feet in length and 150 feet wide, and was set up at Sturgis so that its longer dimension was north and south. The canvas was carried in 16 sections, each weighing about 1,000 pounds. In erecting the tent, the ground was first measured, pins being used to designate the positions of the center and other poles, and the position of the stakes around the outside of the canvas. There were

198—Mich.—6.

two, perhaps three, center poles, a number of poles between them, and the circumference of the tent called quarter poles, side poles around which the side walls of the tent were carried, and the stakes, numbering 180 or 190, driven about 17 feet beyond the edges, or sides, of the canvas. The canvas in the top was secured to ropes by being sewed, the ropes running from the bail pieces or collars fitting around the poles and from the peaks of the tent and so to the edge of the canvas and the ground, ropes also passing transversely around the canvas. These ropes, when the tent is in position, are under the canvas, supporting it. The canvas was made of 6-ounce duck, and was bought, new, in April, 1914, and was in use until the day of the occurrences here considered. The seats in the tent were wholly disconnected from the tent itself. The stakes were driven, after measurements were made, by a mechanical stake driver, operated by an engine on a truck or wagon. The men engaged in this work have no other duty to perform; at least not until that duty is fully performed. Stakes were from 4 to 4½ feet long, and from 3 to 4½ inches in diameter, sharpened, or smaller, at the end which entered the earth. Properly driven, they should go into the earth from 30 to 36 inches. They were driven vertically into the earth. A stake in the outer row having been driven, the platform of the mechanical stake driver was moved in a rotary way so as to bring the hammer over the position of the stakes in the inner row, some 2 to 2½ feet inside those on the outer row. It required two hours and more to drive the double row of stakes, the truck completing a circuit of the ground. The tops of driven stakes should stand above the earth not high enough to interfere with the driving of wagons over them in other operations. The top being laid upon the ground, the sections laced together, the center poles erected and stayed by guys, the circum-

ference of the canvas fixed by the guy ropes to the stakes, the tent was raised, first high enough to admit the placing of the quarter poles and side poles, then completely. Thereafter, it was "guyed out," several men pulling upon each guy rope, which is fastened by a hitch to one and then another of the two rows of stakes. This left some 6 or 7 feet of the guy ropes—1-inch manila rope—unused. In an emergency, as a storm, other stakes are driven by men with hammers, and the ends of the guy ropes used to make an additional fastening to the ground. So, in an emergency, ropes are thrown over the tops of the side poles, at the eaves of the canvas, and carried to stakes, or the wheels of wagons, or to any other available and sufficiently heavy object, and fastened.

The storm upon the occasion here in question came from the northwest—some witnesses say from the west—with a general direction of from northwest to southeast. It exhibited some of the phenomena peculiar to winds, being variable, harmless in places, destructive in others, described by some observers as rolling, by others as having a rotary movement, by all as making a rather narrow lane in the air and upon the earth. Defendant's tents were not blown down. The interrupted performance proceeded. None of the small tents and refreshment stands was blown down or much, if any, disturbed. Automobiles standing about the grounds, some with tops up and curtains drawn, were not blown about or injured. Few outhouses, or trees, in the immediate vicinity, were blown down. The history of the storm shows, however, that at some distance, several miles away, a large building, some 90 by 16 feet, open on one side, was turned over, carrying cement piers to which it was fastened, a scaffold nearby was blown away, some boards being carried a distance of 80 feet, and in various ways considerable damage was done by the wind. The record

shows a great lack of uniformity in what different persons observed. Some describe the morning as promising a storm, others say it was a hot day with sunshine. Some who attended the show noticed no warning in the sky or air, others, shortly before the storm broke, were apprehensive, and a few took their families out of the tent. The defendant's agents seem to have been observing. Several gangs of men were set to driving emergency stakes, and efforts were made otherwise to strengthen the hold of the tent upon the earth.

When the grand entry or cavalcade, with which the performance began, was concluded, just as the storm broke, the elephants, a part of the parade, were taken out through the dressing room to a distance from the tent, instead of being returned to the menagerie. Defendant's testimony tended to prove that this was a precaution adopted in the interests of safety, on account of the danger that the animals, restless during a storm, may stampede. When the storm broke and the canvas began to heave and the poles to dance, there was a panic, or near panic, people arising and leaving their seats and crowding to the entrance, others finding a way out under the tent, many dropping from the seats in efforts to escape. Employees of defendant advised the people to remain seated, so also did others, not employees, who evidently thought to allay fears and prevent a stampede.

It was on the side opposite to that from which the wind came that the considerable mischief was done. The lifting movement of the canvas, which drew the stakes to which guy ropes were fastened and lifted the quarter poles, was destructive on the easterly side of the tent. There was testimony tending to prove that there were holes, small ones, and a few of them, in the top when it was erected and that the canvas was split or torn by the wind or by its action; that the canvas

was discolored and appeared to be mildewed. There was testimony of the opinions of various witnesses that the vertical driving of the stakes was improper driving and that if they had been driven at an angle they would better have resisted the lifting power of the guy ropes and the top. So, too, witnesses were permitted to express the opinion that some of the stakes were too blunt—not properly pointed.

Various witnesses testified about the depth to which the stakes were driven, to the measurement of stake holes after the show had left the city, to measurements of stake holes in another city, where an exhibition was given. Two witnesses, whose testimony seems more or less incredible, testified that, immediately after some stakes had been driven, and while the stake driver was at its work, they tried stakes by pulling on them and found them loose in the earth, yielding by sideways movements to such force as they applied. One, at least, of these witnesses expressed the opinion that he could have pulled the stakes, or some of them he handled, with his hands. On the other hand, the undisputed testimony is, in substance and effect, that defendant used stakes of the size and kind, and drove them in the same way, that all other large circuses employ; that the method of making and erecting the tent is the result of experience and is that employed by all large tent shows.

Plaintiff introduced testimony of statements made by men connected with the circus after the storm tending to prove, by admission, the improper driving of the stakes. To go no further into details, what is here stated seems to be sufficient to explain, generally, the situation laid before the jury.

OSTRANDER, J. (*after stating the facts*). Not all of the questions which the defendant says are involved are pressed upon the attention of the court, and not all of those denoted require discussion.

1. The suit at bar and nine other similar suits were begun on the day the alleged injuries were received. Defendant is a foreign corporation. A large number of people attended the circus. The circumstances invited public interest and discussion, and the charges that the defendant's agents did not properly secure the tent and safeguard the patrons of the show, and the respects in which they were charged with being derelict, were known in and about Sturgis and were discussed there and elsewhere in the county. There were not lacking those who expressed opinions upon the subject, unfavorable to defendant. This appears from the affidavits filed in support of the motion for a change of venue, the affidavits in most instances expressing the belief that an impartial trial of this case could not be had in St. Joseph county. So far as opinions are to be considered, affiants who made affidavits opposed to the motion expressed a contrary opinion. In the original declaration, the damages were laid at the sum of $1,950, it was later amended so as to claim damages in the sum of $2,990, and the inference is drawn, not unreasonably, that a removal of the cause to the Federal court was something counsel for plaintiff desired to prevent.

It is assumed, nothing to the contrary appearing, that no difficulty was encountered in securing a jury, and there is no claim made that the damages awarded, $1,000, were excessive, there being testimony to support the conclusion that injuries received by the plaintiff were permanent. Assuming that questions of fact were properly submitted to the jury upon competent and material testimony, the result of the trial is not indicative of a hostile public sentiment or of prejudice on the part of the jury. There is no inevitable legal inference from undisputed facts that local prejudice existed, and none that the court below abused judicial discretion in denying the motion for a change of venue.

*People* v. *Gage,* 188 Mich. 635, 643 (155 N. W. 464).

2. While the declaration alleges as inducements to plaintiff to enter the tent an advertisement, circulated by defendant, to the effect that the tent was storm proof and wind proof, and it is duly alleged that plaintiff paid the price asked by defendant for a seat in the tent, the gravamen of the action is negligence.

Whether defendant was negligent in all or any of the respects alleged, and whether the negligence proved was the proximate cause of the injury received by plaintiff, were questions fairly raised by testimony produced by plaintiff, and questions which could not and cannot now be properly answered by the court. The testimony for plaintiff tends to prove that the storm was an ordinary summer storm; that stakes which it was usual to drive into the ground from 30 to 36 inches were driven only from 18 to 24 inches, or a less distance. The inference is not unreasonable that, if the stakes on the easterly side of the tent had held, no mischief would have resulted. Defendant contended, and contends, that it used ordinary care in providing and in erecting the tent, that the storm was extraordinary, was, indeed, so violent that such acts of negligence on its part as are alleged were, as to the consequences, negligible.

In an opinion delivered in the case of *Cole* v. *Loan Society,* 124 Fed. 113 (59 C. C. A. 593, 63 L. R. A. 416), relied upon by counsel for defendant, it was said:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. An injury that results from an act of negligence, but that could not have been foreseen or rea-

sonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the .natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it. * * *

"The test of liability, therefore, in cases of concurring negligence is the same that it is in all other actions for negligence. It is the true answer to the questions: Was the injury the natural and probable consequence of the act on which the action is based? Was it reasonably to be anticipated from that act? If it was, the action may be maintained, although the negligence of another concurred to produce the untoward result. If it was not, the act of negligence will not sustain an action, whether the act of another concurred or failed to concur to produce it. A negligent act from which an injury could not have been foreseen or reasonably anticipated is too remote in the line of causation to sustain an action for an injury in every case, and the concurring negligence of another cannot make it less remote, nor charge him who committed it with responsibility for it to which he would not have been liable to answer in the absence of the negligence of the third party."

It is lawful that public entertainments shall be given in tents. Proprietors are not insurers of the safety of patrons, but they must exercise, to prevent disaster, care commensurate to the situation. See *Scott* v. *Athletic Ass'n,* 152 Mich. 684 (116 N. W. 624, 17 L. R. A. [N. S.] 234, 125 Am. St. Rep. 423) ; *Logan* v. *Agricultural Society,* 156 Mich. 537 (121 N. W. 485) ; *King* v. *Ringling,* 145 Mo. App. 285 (130 S. W. 482). In the latitude of Michigan, summer storms with wind and rain are common, the wind often attaining considerable velocity and doing considerable

injury.    Such storms often arrive, break suddenly,
and are as soon gone.    These were circumstances to be
considered by the defendant in erecting the tent.    They
were to be considered, also, by patrons, who could
not expect that tents, however well constructed and
erected, would be as substantial as houses and afford
the same protection from the elements.    The doctrine
of the case just referred to, applied here, required
that the jury, upon the whole case, determine whether
the facts upon which defendant's liability depends,
were established.

3. It is urged, and is true, that the testimony for
the plaintiff fails to show what object struck him,
except as the cause of injury may be inferred.    It is
a reasonable, if not necessary, inference, that he was
struck by some of the paraphernalia of the tent, a
stake, or pole.    There is no testimony to support an
inference that objects not connected with the tent,
and set in motion by the action of the canvas, entered
the tent and inflicted the injury.    *Scott* v. *Railroad*
Co., 182 Mich. 514, 522 (148 N. W. 719), and cases
cited in opinion.    Considering that the testimony re-
quired the case to be submitted to the jury, and the
court having submitted it, it remains to be seen wheth-
er reversible error was committed in the charge, in
admitting or rejecting testimony, or otherwise in the
conduct of the trial.

4. The charge of the court must be read as a whole
and with regard to the contentions of the parties.
The jury was instructed that the plaintiff must estab-
lish, by a preponderance of the evidence, that defend-
ant was guilty of negligence, and that its negligence
was the proximate cause of plaintiff's injury;

"that circus tents are not erected with a view to resist
storms of such an unusual or extraordinary character
as may not by the exercise of ordinary care and fore-
sight be reasonably anticipated or provided for or

guarded against.  \*  \*  \*  Ordinary care  \*  \*  \*  is the measure of duty of defendant, and the jury have no right to hold defendant to a higher degree of duty;"

if the evidence left it as probable that the injury was the result of the storm as the sole and proximate cause as it did that it was the result of defendant's alleged negligence as the sole proximate cause, plaintiff could not recover.  Other portions of the charge have been set out.  One request to charge, No. 41, was:

"The defendant was not required to contemplate or provide against unusual or extraordinary storms."

And another, No. 43, was:

"As applied to this case, an act of God may be defined as a natural cause, such as a storm of wind, whatever its characteristics may be, which cannot be prevented by the exercise of ordinary care and the use of those appliances which the situation of the party renders it reasonable that he should employ."

Neither was given as preferred.  As to No. 41, it was said, in refusing a new trial, that it "lacked this additional language:  'Of such a character that human care and foresight could not anticipate or guard against.'  It was covered by general charge."

Defendant was bound to anticipate the ordinary usual storm of the season and latitude and its probable consequences, reference being had to the character of the structure to which the public was invited, and in view of such a storm arising, and in view of its probable consequences, it was bound to use ordinary care in the selection and erection of the tent.  If it did this upon the occasion here in question, it is not liable in this action.  If it did not, then it may be liable unless the storm was so violent in character that, whether defendant was or was not negligent, in the respects indicated, the result would have been the same; unless to the storm may be charged whatever occurred.

This, in substance and effect, is the rule given to the jury, and is the correct rule; but as applying the rule, and as affecting its possible liability, I am impressed that defendant was entitled to have its requests 41 and 43 given as preferred. The court went further. The jury was told that the burden rested upon defendant to prove that the storm was so violent that it was the sole proximate cause of plaintiff's injury. In this the court was in error, because plaintiff, upon the whole case, was bound to prove that defendant's negligence was the proximate cause of the injury.

The rule stated by the court has been applied where goods intrusted to a common carrier were lost or destroyed. In the absence of contract, the common law imposed upon common carriers the extraordinary liability of insurers against all loss unless occasioned by the act of God or the public enemy, and the carrier was not permitted to throw upon his employer the burden of proving, or inferring, negligence or defective means until the carrier had shown the intervention of such an extraordinary, violent, and destructive agent as by its very nature raised the presumption that no human means could resist its effects. See, generally, *McArthur* v. *Sears*, 21 Wend. (N. Y.) 190; *Coggs* v. *Bernard*, Lord Raymond, 909, and note, 1 Smith's Lead. Cas. (8th Ed.) 369, 422; *Tobin* v. *Railway Co.*, 192 Mich. 549 (159 N. W. 389). No such extraordinary liability is imposed by the law upon the defendant.

The court was not in error in advising the jury upon the subject of the duty of defendant to warn the audience of the approach of the storm, correctly stating that as affecting this duty was the actual condition of the tent, presumably known to defendant. It might well have added to the instruction that if the storm was an ordinary one, as plaintiff claimed it

was, and the tent was put up as defendant asserted it was, there could arise no duty to warn. It is not difficult, after a critical reading of the charge, to suggest additions to and variations of the language calculated to enlighten the jury. None was made by defendant, whose requests to charge, except as given in the general charge, as indicated herein, it was not error to refuse.

5. In view of the testimony tending to prove the physical condition of plaintiff and permanent injuries, · it was not reversible error to admit in evidence the tables of mortality showing his expectancy of life. It is true that Dr. Kane, the only witness upon the precise subject of a continuing injury, testified only that his condition *might* continue during life. But plaintiff was 82 years old when he gave his testimony. (He has since died.) He was hit on the head, and a bad wound resulted. He was thought by some to be dead. Effects of the injury were that he was dizzy, walked with difficulty, using a cane. He lost his balance when standing and fell. Pain continued. He testified at length to his condition. He had enjoyed excellent health, never had been sick. The court instructed the jury not to regard the tables unless they were convinced to a *moral certainty* that a permanent injury was received.

6. It was ei_ .r to admit opinion evidence tending to prove that the stakes should not have been driven vertically, at right angles with the earth, and should have been driven at another angle. No witness who expressed such an opinion was shown to have had any experience in securing large tents to the earth. It has been pointed out that the method of driving stakes employed by defendant is, according to the undisputed testimony, the method employed in securing all large circus tents; is the method which experience has demonstrated to be best.

It was error to admit testimony tending to prove that, either before or after the storm, employees of defendant admitted that the tent was not properly erected, or made statements from which the inference of negligence would arise. Otherwise, if, at any time, responsible officers and agents of defendant made such admissions.

The witness Simpson was asked, and over objection and exception he answered, this question:

"*Q.* I wish you would state whether in your opinion if those stakes had had proper points on them and were driven to a depth of 30 to 36 inches whether or not in your opinion they would have held and not pulled out in that storm as you observed it, with the tent as you observed it, sitting up there?"

He answered:

"*A.* Why, I should think they would have held."

This witness had not qualified as an expert in this behalf, nor does it appear upon what premises his conclusion was based.

7. It is complained that plaintiff's attorney used in argument intemperate language. As reported, it was most intemperate. As it was immediately disclaimed, it may or may not have prejudiced defendant. It will not be assumed that upon a new trial it will be repeated.

8. A careful examination of the large record presented in this case has not convinced me that the verdict is opposed to the great weight of evidence.

For errors pointed out, the judgment must be reversed, and a new trial granted, with costs to appellant.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.