TOBIN *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. CARRIERS—RAILWAYS—FREIGHT—DELAY—ACT OF GOD.

Where the plaintiff shipped five car loads of hogs, cattle, and sheep over defendant railway to be transported from Plainwell, Michigan, to Cleveland, Ohio, which did not arrive at their destination until after the expiration of four and five days, and the testimony tended to show an unexplained delay at four different points, resulting in killing a part of the stock and in shrinkage of the rest, the defense that a severe snow storm caused delay at one of the points did not relieve defendant railway of liability on the theory that it was an act of God.[1]

2. SAME—DEFINITION.

An act of God is an inevitable accident without intervention of man or a public enemy.

3. SAME—DEFENSES—WAIVER—LIMITATION BY CONTRACT.

Failure to present plaintiff's claim for the loss within five days, as required by the contract of carriage, was a de-

[1] For authorities passing on the question as to whether a snow storm is an act of God which will relieve carrier from liability for injury to live stock, see note in 24 L. R. A. (N. S.) 1209.

fense that the carrier ought to have pleaded, and the omission to do so amounted to a waiver of the claimed requirement.

4. SAME—EXPENSES—FEEDING STOCK.

An expense that the plaintiff would not have been required to pay but for the alleged delay in shipment, as for feeding the cattle in transit, was a proper element of the shipper's damage for negligence in transporting the shipment with reasonable promptness.

Error to Allegan; Cross, J. Submitted January 18, 1916. (Docket No. 54.) Decided September 26, 1916.

Case by John M. Tobin against the Lake Shore & Michigan Southern Railway Company for damages to live stock in transit. Judgment for plaintiff. Defendant brings error. Affirmed.

*Samuel H. Kelley* and *Lewis L. Thompson,* for appellant.

*Charles Thew* (*Alfred J. Mills,* of counsel), for appellee.

BIRD, J. Plaintiff is a dealer in livestock. On November 8, 1913, he turned over to defendant five cars of mixed livestock, consisting of hogs, cattle, and sheep, to be transported to Cleveland. The five cars went forward on the same train, on the same day, leaving Allegan or Plainwell some time between 3 and 4 o'clock Saturday afternoon, and arrived in Elkhart, Ind., at 9:45 p. m. The usual time for such shipments between Allegan and Cleveland was from 24 to 32 hours. The cars were delayed, and did not arrive at the Union Stockyards in Cleveland until several days later. One car arrived on November 12th at 10:40 a. m. The other cars arrived on November 13th at 3 a. m. When they did arrive many of the hogs were dead, and some crippled, and there was a large shrinkage on all of the stock. Plaintiff complained of defendant in an action

of tort, for the failure to transport the cars within a reasonable time, and for its failure to properly care for and feed the stock while in transit. A jury assessed his damages at $1,200, and defendant assigns error.

1. There was a considerable fall of snow between the 9th and 12th of November while this stock was in transit, and the fall was very heavy in and around Elyria, Ohio, and counsel contends that the damages resulting to the stock were due to the severity of this storm, which was an act of God, and not to defendant's negligence. If it can be said from the testimony that this is true, counsel is undoubtedly correct in his contention. An "act of God" is defined as "Inevitable accident without the intervention of man or the public enemy." 29 Cyc. p. 440. Under this definition the defendant would be relieved from liability only in the event that it should appear that the storm was the sole, proximate cause of the injury. *Id.* It is insisted by plaintiff that by the exercise of ordinary care the defendant could have averted the injury, notwithstanding the storm. The record upon this phase of the case discloses that the stock was delayed at Elkhart 6 hours and 45 minutes, at Port Clinton 2 hours and 55 minutes, and at Sandusky 14 hours and 20 minutes. The balance of the delay was at Elyria. It does not clearly appear what caused some of these delays. No reason is given for the delay at Elkhart. The only reason assigned for the delay at Port Clinton was the "picking up of some boarding cars." No reason is assigned for the delay at Sandusky. When the engineer of the train was questioned as to the cause of the delay at Sandusky, he replied that he did not know. Notwithstanding the storm conditions were severe around Elyria it appears that of the four tracks passing through Elyria the two north tracks were not blockaded by the snow, and that passenger trains were ar-

riving and departing thereon. The record also shows that the stock had been in the cars in excess of 36 hours when the train left Sandusky, and that, while there were facilities for feeding the stock at Sandusky, they were not fed until some time later at Elyria, after they had been in the cars for upwards of 60 hours. There is an abundance of testimony in the record which tended to sustain plaintiff's contention that defendant was negligent as alleged in the declaration.

2. Plaintiff filed with defendant a written claim for damages, but not within 5 days from the date of the removal of the stock from the car, as provided by the bill of lading. This is said to be fatal to plaintiff's case. The plaintiff relies upon a waiver of that defense, because of defendant's failure to plead it. Plaintiff planted his suit in tort for the failure of defendant to observe its common-law duty. When the plaintiff showed a delivery of the stock to defendant in good order, to be transported to Cleveland, its subsequent delivery in a damaged condition, together with the delay, and failure to feed the stock, he made a *prima facie* case. 5 Am. & Eng. Enc. Law (2d Ed.), p. 353; *Bonfiglio* v. *Railway Co.*, 125 Mich. 476 (84 N. W. 722). It was then incumbent on defendant to show that there was a special contract which changed or modified the common-law liability. In order to do this, it was necessary to plead it. The "5-day" provision for filing the claim is a part of the special contract. Defendant's failure to plead it resulted in a waiver of that defense. 6 Cyc. p. 517; *Crowley Bros.* v. *Railway Co.*, 185 Mich. 482 (152 N. W. 215).

3. Complaint is made that the verdict was excessive. The principal items constituting the claimed excess is the charge for feeding the stock at Elyria. This item was paid by plaintiff's agent in Cleveland when the freight charges were paid. Plaintiff's reply to this is that, where it becomes necessary to feed stock by rea-

son of the negligent delay of the carrier, the expense should be borne by the carrier, and not by the shipper. The plaintiff had been a shipper for 8 years on defendant's line, and nearly every Saturday during that time had shipped stock from that vicinity to Cleveland, and he testified that the usual time for transporting it was from 24 to 32 hours. If the stock were delayed by the negligent handling of it by the defendant, so that it became necessary to feed it in transit, the cost thereof was a proper element of plaintiff's damage. The record appears to furnish a basis for the amount of the verdict rendered.

We are of the opinion that the trial court was not in error in refusing a new trial.

The judgment must be affirmed, with costs to the plaintiff.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.