## UNION PACIFIC RAILROAD CO. v. PACIFIC MARKET COMPANY.

### (No. 957; Decided April 20th, 1922; 206 Pac. 143.)

APPEAL AND ERROR—CARRIERS—CLAIM FOR DAMAGES AGAINST CARRIER —NOTICE OF CLAIM REQUIRED BY TRANSPORTATION CONTRACT.

1. In an action against a carrier for damages to sheep during shipment, evidence as to a conversation between the shipper and the carrier's agent relative to dipping the sheep *held* not to show a claim for injuries to the sheep caused by previous exposure of them to infection, which made the dipping necessary.

2. Whether the carrier made any investigation as to injury to a shipment has no bearing on the question of the sufficiency of the claim of injury made by the shipper.

3. Under Comp. St. 1920, § 5897, the Supreme Court may properly remand a case after reversing a judgment for plaintiff, with directions to render a judgment for defendant, where defendant at the trial made a motion for a directed verdict in its favor, to which it was entitled at the time.

ERROR to the District Court, Albany County, VOLNEY J. TIDBALL, Judge.

On petition for rehearing. For former opinion, see 27 Wyo. 501; 200 Pac. 108.

*Herbert V. Lacey,* and *John W. Lacey,* for plaintiff in error.

*Corthell, McCullough & Corthell,* for defendant in error.

Potter, Chief Justice.

The defendant in error has filed a petition for rehearing in this case, specifying the following points: (1) That the court erred in holding that the presentation of the claim was not a sufficient compliance with the bill of lading; (2) that the court erred in remanding the cause with directions to enter a judgment for the defendant.

With reference to the first point, it is contended, as upon the previous hearing, that the case of Kidwell v. Oregon S. L. R. R. Co., 208 Fed. 3, 125 C. C. A. 313, cited and quoted from in our former opinion, is in conflict with and substantially overruled by the case of Georgia F. & A. R. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948. That contention was considered in the former opinion wherein it was stated that we did not think that there was any conflict between the fundamentals of the two decisions, except possibly with respect to the statement in the Kidwell case that information that a claim *will be* presented "is not to present a claim for loss, damage or detention." And as to that it was said that we did not place any importance upon the mere fact that the claim in this case was spoken of in the future tense "for the use of any other tense with reference to a claim which existed only in anticipation would have been absurd." But we did accept the Kidwell case as an authority upon the proposition that mere information to the agents of the company along the line of the route of the shipment, and before the cattle had reached their destination, that on account of side-tracking and bad handling of the cattle, the shipper was going to put in a claim for damages, and like information to the agent at destination, was insufficient as a presentation of

an oral claim (a written claim not being required) since it was too indefinite as to the character of the claim. And in that respect our view was and is that the case is not in conflict with the Blish case. In the Blish case, as explained in Calumet & Hecla M. Co. v. Delaware L. & W. R. Co., 198 App. Div. 348, 190 N. Y. S. 410, the claim was in the form of a telegram (and therefore in writing) "and specifically stated that the shipper made claim against the Railroad for the entire contents of the car at the invoice price," and therefore "left nothing unsaid except the market value of the damaged goods." And in the same case the court also distinguished the Starbird case, 243 U. S. 592, 37 Sup. Ct. 462, 61 L. Ed. 917, a case again relied on here, by stating that while the evidence did not state the value of the damaged peaches, or the exact amount of the claim, "the shipper otherwise made claim for loss and damage in no uncertain terms." And in the Starbird case, notice was all that was required, since the provision of the bill of lading was, "claims for damages must be reported by consignee in writing," with reference to which the court said that such notice puts in permanent form the evidence of an intention to claim damages and will serve to call the attention of the carrier to the condition of the freight, and enable it to make such investigation as the facts of the case required while there is opportunity to do so, and the bill of lading contained no stipulation requiring a specific claim to be filed within the time specified fixing the amount of damages to be claimed.

It is also contended that the case of Olson v. C. B. & Q. R. Co., 250 Fed. 372, 162 C. C. A. 442, cited in our former opinion, is not in point, for the reason that the statement that the written notice was given before the damage was sustained was unnecessary since the notice was not a claim for damages at all, but merely an indirect demand to get the cattle on feed at a named station. In that case it appeared that during the transportation of cattle, the shipper had telegraphed the railroad superintendent from Raton, N. M., "Bad run all the way from Albuquerque snow storm here

now impossible unload at Raton cattle will chill to death up to you and company get cattle on feed La Junta." But notwithstanding that telegram the cattle were unloaded at Raton where several of them died. With respect to the request or demand that the cattle be not unloaded at Raton but taken to La Junta, the telegram is not unlike the protest in this case against the proposed dipping of the sheep and the request or demand that they be released or reloaded for transportation to destination. And in that respect counsel's contention that the telegram was not a claim for damages at all would seem to apply with much the same force to the facts in this case relied upon to show the presentation of a claim, notwithstanding that in this case it was stated by the shipper that if the sheep were dipped there would be a claim for damages. And what was said in the Olson case concerning the telegram aforesaid we think is applicable here. The further point made with reference to that case, that the court's statement that the telegram was sent and received before the damage was inflicted was unnecessary and not in point, does not agree with our understanding of that decision. It was stated in the opinion in that case that counsel had argued that said telegram, together with the fact that the transportation agent was present at Raton when the cattle arrived there and saw their condition, the fact that oral notice for claim for damage was given to the agent of the railroad at Billings, and the fact that the company had acknowledged receipt of a subsequent written notice, though given later than the time specified in the contract, waived and rendered futile the contract provision for written notice, within the time prescribed. Then, discussing the point as to the facts upon which the contention was made other than the sending of the telegram, it was held that the evidence of oral notice was incompetent and did not amount to a waiver of the contract provision for a written notice, and that the company could not and did not waive its contract for a written notice. Following which, the court disposed of the contention as to the telegram by stating that it was sent and re-

ceived "before the damage was inflicted;" and then said further that the knowledge of the situation by the freight transportation agent was by no means the equivalent of a notice of the shipper's claim for damage, that the extent of the damage was probably not then known, nor was it known that the shipper would claim any damages, nor could any one perceive what part of the damages, if any, was chargeable to the railroad company. We think clearly that what the court said about the time when the telegram was sent and received is not to be understood as a mere makeweight, but as one of the substantial grounds for the decision.

The cases of Boyd v. King, 201 Mich. 436, 167 N. W. 901, and Emery v. Wabash R. Co., 183 Ia. 687, 166 N. W. 600, cited for our consideration, are clearly distinguishable, we think, from the case at bar, for the reason that in those cases the damage had occurred, and the only thing, if any, left uncertain when the notice was given or the claim made was the amount of the damage. And a recent case decided in Massachusetts, which has come to our attention, is also distinguishable for the same reason,—Fisk R. Co. v. N. Y., N. H. & H. R. Co., 132 N. E. 714.

Several shipments of strawberries were involved in the Emery case. In the case of each shipment there was a joint inspection at destination by representatives of both parties and a report showing the damaged condition of the berries, and on the same day or the following day, the shipper delivered to the agent of the railroad company a written notice to the effect that it would file a claim for damages sustained, describing the shipment, the car, the place of shipment and destination, and date of arrival, and referring to the inspection report, two of such notices stating that the claim would be filed in due time. A more formal claim was later filed as to three of the shipments, but not within four months. The notice in each case was held a sufficient compliance with the provision of the bill of lading for filing claims in writing within four months, following the Blish case which it was said "clearly deter-

mined'' the question.   No such situation is presented by the facts in the case at bar.

In Boyd v. King, supra, the shipment was of a carload of livestock consigned from Fremont, Mich., to Buffalo, N. Y.   Owing to quarantine regulations the shipper was informed by the agent at shipping point that the car could not be routed through Canada, as the latter desired, but could be routed by Plymouth, Mich., and Toledo, over the Lake Shore, to which the shipper agreed.   The stock was unloaded at Plymouth by the carrier, when it was found that it could not be reloaded for destination, and the shipper was asked for instructions.   He telegraphed the carrier, through agent at shipping point, to forward the car to Buffalo at once or contents of car belong to railroad.   The same day he was informed that the car could not be reloaded because of quarantine in the county where the stock had been unloaded.   He then gave agent to forward a telegram instructing the sale of the stock at Detroit (same county, as we understand), and that the carrier, naming it, would be held for all damages, and later another telegram to divert the car then at Plymouth to a named firm at Detroit, and ''we will hold'' the carrier, naming it, ''for all damages.''   The car of stock was then taken to Detroit and there disposed of for plaintiff by his agents to whom it had been diverted, causing a loss for which suit was brought. The court said, respecting the point made by defendant that contract provisions for filing claim within five days had not been complied with:

''The point that plaintiff was precluded from his action by failure to comply with a provision in his shipping contract requiring a claim for damages to be made in prescribed form and manner within five days was not pleaded by defendants, which was a waiver of that defense under Tobin v. Lake Shore, 129 Mich. 550, 159 N. W. 389, and it is also shown that when first informed his stock had been unloaded at Plymouth, in a quarantined county, at a time he claimed they should have reached Buffalo and supposed they had, plaintiff notified defendants twice, by telegram,

of his claim for resulting damages. Defendants were certainly advised promptly that a claim was made, so that a timely investigation of the facts could be had if desired, which is said to be the 'obvious purpose of the notice.' ''

Fisk R. Co. v. N. Y. etc. R. Co., supra, is like the two cases above considered in this, that the default and damage had occurred when the notice held sufficient as a written claim was given. That concerned an interstate shipment and there had been a misdelivery of the goods at destination, though the shipper had not been informed of that, but supposing them to have been lost after having made inquiries, it wrote the carrier, stating: ''Our customer will not accept this shipment unless it is delivered at once and it will be necessary for us to enter claim with the railroad company covering same.'' That was held to be sufficient, construed ''in a practical way, and in the light of the existing facts as known to the parties,'' and as coming under the authority of the Blish case.

In the Blish case the final telegram which stated that the shipper ''will make claim against railroad for entire contents of car at invoice price,'' was considered in connection with previous telegrams between the parties, the court saying, that in the preceding telegrams the shipment had been adequately described, ''so that this final telegram taken with the others established beyond question the particular shipment to which the claim referred and was in substance the making of a claim within the meaning of the stipulation —the object of which was to secure reasonable notice,'' and further: ''We think it apprised the carrier of the character of the claim, for which it stated that the claim was for the entire contents of the car 'at invoice price' this did not constitute such a variance from the claim for the flour as to be misleading; and it is plain that no prejudice resulted.''

We can well understand the reasoning and conclusion of the court upon the facts in that case, and, the force of the decision when applied to similar facts in other cases. And it is not difficult to understand the reason for attach-

ing no importance to the fact that a notice, whether written or oral, sufficient as a claim in other respects, states that a claim will be made, where the facts are such as to reasonably permit the making of a claim at the time. But we cannot accept an interpretation of the decision in the Blish case going beyond what we believe was intended by it, so as to render it applicable and controlling where the notice has been given in advance of any injury and has reference only to damages anticipated as the result of something that may occur in the future or that is proposed to be done against the desires or protest of the shipper. For the information by such a notice that damages will be claimed cannot be understood in any other sense than as referring to a claim to be presented or made in the future. It seems clear that a claim when made, under a provision in a bill of lading such as we are considering, must be based upon facts then existing or supposed to exist. It cannot have been intended by such a provision that a shipper may comply with it by giving notice, prior to any default on the part of the carrier or any act for which the latter might be liable in damages, that if delay in transportation should occur, or injury to the property, damages will be claimed.

The recent decision in Calumet & H. Min. Co. v. Delaware, L. & W. R. Co., supra, is somewhat in point, since the writing relied on to show the making of a claim within the time specified was held insufficient partly for the reason that it was delivered before it had been definitely ascertained that any loss or damage had been sustained, or, at least, that fact was considered as showing that the writing was not intended at the time as a notice of claim. The writing so relied on was a receipt to the carrier for a number of billets of copper that had been shipped from the plaintiff's works in Michigan to New York City, and delivered as directed by plaintiff on board a steamship for transportation to France; the receipt describing fully the copper actually delivered on board the steamship, and then containing these words: ''Ten (10) billets, mkd. C. & H.

more, in dispute. If on board, to be delivered.'' The situation at that time is described by the court as follows:

''The receipt   *   *   *   together with the letters above referred to, clearly disclose that some dispute had arisen respecting the ten billets of copper claimed to be missing from the plaintiff's shipment. The defendant, evidently thinking that there might have been a mistake in checking the copper, wished to take advantage of a rechecking when the steamship Orleans reached Bordeaux. When the cargo was checked at Bordeaux in June, 1917, it became certain that the 10 billets of copper had not been found on board the steamship, and the plaintiff had notice of that fact, but, so far as disclosed, took no step to notify the defendant until the aforesaid belated notice of claim was filed (11 months after plaintiff had notice). It is apparent that, when the plaintiff executed and delivered to the defendant the receipt of April 9, 1917, the plaintiff did not intend such receipt to operate as a notice under the aforesaid bill of lading, nor does it appear that the defendant accepted such receipt as such written notice.''

Referring then to the Blish and Starbird cases, as shown above, the court further said:

· ''In the case at bar the plaintiff clearly understood that, in order to recover, it was necessary for it to file a written notice of claim, as provided in the bill of lading. Formal notice of loss was filed by the plaintiff many months too late. The use of the words 'in dispute' contained in the aforesaid receipt, shows clearly that neither of the parties regarded the notice as final, or that it had actually been determined that any loss or damage had been sustained. At most, the statement in the receipt indicated uncertainty as to whether the ten billets of copper were included in the shipment. Such uncertainty was to be resolved when the goods came to be rechecked at Bordeaux. The defendant had a right to expect further advice, if, upon arrival there, it was found that the ten billets were missing, and, if the plaintiff was to make claim for loss, that the defendant would receive timely written notice of such claim. * * *

We do not think that the receipt in question constituted even a substantial compliance with the requirements of the bill of lading.''

Considering a contention in Bronstein v. Payne, 113 Atl. 648, that a letter sent to the carrier, enclosing the bill of lading and paid freight bill requesting that the goods be traced constituted a written claim of loss, the Maryland Court of Appeals said that the letter, referred to as a ''tracer'' possessed none of the characteristics of a ''claim'' as that expression is ordinarily understood, that the ''claim'' which should have been filed in accordance with the terms of the bill of lading ''could mean nothing less than a demand for the value of goods which had been lost,'' and that:

''While the notice need not be in any particular form, it must nevertheless possess the characteristics of a claim; that is to say, it must amount to a demand for compensation, or it must give notice of an intention to claim compensation for loss suffered.''

It is held that where the contract requires the presentation of a claim for damages within a specified time, such requirement is not satisfied by merely giving notice of the negligence of the defendant's servants. (W. U. Tel. Co. v. Moxley, 80 Ark. 554, 98 S. W. 112; Chicago, R. I. & P. Ry. Co. v. Williams, 101 Ark. 436, 142 S. W. 826.) And in Texas a case brought to recover for loss of and injury to cattle as well as an overcharge for freight, and the only notice of a claim for damages was a letter complaining that the train transporting the cattle had been delayed, and that the carrier's agents had exacted a stated amount for expense of transportation in addition to the contract price, it was held that the letter was not a notice of the shipper's claim for damages for the loss of or injury to the cattle. (Tex. & Pac. Ry. Co. v. Jackson, 3 Tex. Court of App. (Willson) 41.)

In Lytle v. W. U. Tel. Co., 165 N. C. 504, 81 S. E. 759, the court say: ''A mere casual remark to the agent at Altapass that the message had been delayed, and some one

would have to pay for it, was in no sense a claim or demand such as is contemplated by the contract. It was not in writing, as required by the stipulation, nor did it give any fair or adequate idea of her claim, being entirely too indefinite.''

But it is further contended that the claim is founded upon the exposure and infection of plaintiff's sheep at the loading yards and not upon the dipping, which was only the natural result of the carrier's alleged wrongful act, and that the claim had fully accrued and the company's liability was complete when the sheep were so exposed and infected; that the alleged results are not an element of the wrong complained of, and are important only as evidence of the extent of the injury. It is also argued in that connection that if the sheep, instead of having been destined to the market had been transported for any other purpose the infection might not have been disclosed until months after the exposure, and it would then have been impossible to present the claim after the damages had become known.

The fact is, however, that the sheep were on the way to market and the injury from the dipping and delay on that account as well as the extent thereof evidently became known very soon after the arrival of the sheep at destination, so that we need not inquire what the situation or rights of the parties might have been under other circumstances.

It is true that the written claim when presented months too late stated and complained of the fact that the sheep had been placed in infected yards, resulting in their having been held and dipped at Laramie, and the petition herein alleges in substance that the defendant negligently and wrongfully suffered its said yards to become exposed and infected with scabies, whereby said sheep became exposed to and infected with said disease and became and were liable to be and were stopped in transit and dipped for said disease. But nothing was said about such alleged negligence, or the exposure and infection of the yards or

the sheep in the conversation relied on to show the presentation of the claim.  The testimony of the plaintiff's representative concerning such conversations was, that he first saw the chief clerk of the Assistant Superintendent of the Railroad at Laramie, where this occurred: "I wanted to know what they were going to do with the sheep that were in the yards; we could not get them out, could not feed them; they were held in the yards there, and he said they would have to be dipped.  *  *  *  I told him these sheep would sustain considerable damage being held here and dipped and that we would hold the Railroad Company responsible for the damages which we sustained in shrinking or otherwise."  That he then saw the company's agent at Laramie, that he "wanted to find out about the sheep, as the Superintendent's clerk said they would have to be dipped, when they would be dipped, or who they would be dipped by, and he (the agent) said that there would be a man up from Denver, he understood, to dip them, and I told him that the sheep had been inspected by a Government man and by a State man, and we did not think they needed dipping, and it would cause considerable damage to the sheep, and we certainly would hold the company responsible for that damage."  Then, asked what he was trying to do with the sheep at the time of such conversations, he said: "Trying to release them."  Q.  Were you asking the company to do anything with them?"  A.  "Yes.  We were asking them to release them so we could ship them."  And on cross-examination: "Q.  And Mr. Cady, (the agent) said he could not release them; that there was a Government man coming?  A.  Yes, a Government man was coming—.  · Q.  You were asking him to release the sheep?  A.  Asking if we could not get them released.  Q.  That was what you were talking about?  A.  Yes, sir."  And he also testified on the cross-examination that the Superintendent's clerk stated that he could not release the sheep, and that it was up to the Government man as to when they would be dipped, or what they would do with them.

Following the rule of the Blish case that the stipulation for presenting claims within a specified time is to be construed "in a practical way" we remain of the opinion that what was said in the conversations referred to did not, under the circumstances, amount to a substantial compliance with said stipulation. We see nothing in the evidence concerning the conversations to indicate that either party understood that a claim for damages was then being presented or made; certainly no demand was then made except for the release of the sheep, but it appears from the evidence that the shipper's representative in the conversations, an officer of the company, had formerly been cashier of the Railroad company at the Laramie station, that his company, the plaintiff, was and had been a large shipper of livestock, and had presented claims for damages in connection with such shipments prior to 1914, the year of the shipment in question.

It is urged under the second ground specified in the petition for rehearing that if the notice relied on is to be held insufficient upon the present record, the plaintiff should be permitted to make proof, if possible, of the fact of investigation by the defendant, if that fact has any bearing upon the sufficiency of the claim. We do not think the fact would affect the question. It is also argued that our order remanding the cause with directions to enter judgment for defendant seems to be inconsistent with the uniform practice of the U. S. Supreme Court, and the decision in City of Rawlins v. Jungquist, 16 Wyo. 403, 96 Pac. 144. This case does not come under the rule controlling the decision in the Jungquist case as to the question of practice, but under the provisions of a statute enacted in 1915, now Section 5897, Comp. Stat. 1920, which provides that when, in the trial of a civil action, a motion is made by either party that a verdict be directed in favor of such party, or an instruction to that effect is requested, and the motion or instruction is denied, the trial court, on motion by such party for a new trial or for judgment notwithstanding the verdict, may order judgment to be entered in favor of the

party who was entitled to have a verdict directed in his favor, and the supreme court, in reviewing the judgment on exceptions and error, may order and direct judgment to be entered in favor of the party who was entitled to have such verdict directed in his favor, whenever it shall appear from the pleadings and evidence that the party was entitled to have his motion or request for a directed verdict granted. The defendant, at the proper time, as stated in the bill of exceptions, made a motion in writing that the court instruct the jury to return a verdict in its favor and against the plaintiff. That motion was denied and the defendant excepted to the ruling, and the ruling was stated in defendant's motion for a new trial as a ground therefor, which motion was also denied, and an exception was taken to that ruling.

As stated in the former opinion, the defendant, in our opinion, was entitled to an instructed verdict, and we think the order made in remanding the cause was the proper one. It will be apparent from the foregoing restatement of our views that we perceive no good reason for granting a rehearing.

*Rehearing denied.*

KIMBALL and BLUME, JJ., concur.