ARNESTED v. McNICHOLAS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—COURSE OF EMPLOYMENT.

Although an employee of a road contractor carried a rifle with him in the woods, as was the custom of some of the workmen employed in that locality during the deer season, testimony that he was searching for a better route over which to construct a road to his employer's cottage when he was accidentally shot and killed, presumably by a deer hunter, *held*, to justify a finding by the department of labor and industry that the accident arose out of and in the course of his employment.

2. SAME—HAZARD PECULIAR TO EMPLOYMENT.

The contention that the hazard was not one specially incident to the employment, and that, therefore, defendant is not liable, cannot be sustained, since deceased was where his work required him to be when the accident happened, and but for his work it could not be said that he would have been subject to this particular danger.

Certiorari to Department of Labor and Industry.

Injuries arising out of and in the course of employment are discussed in notes in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

Submitted June 12, 1923.    (Docket No. 2.)    Decided July 19, 1923.

Mayme Arnested and others presented their claim for compensation against John E. McNicholas for the accidental death of decedent in defendant's employ. From an order awarding compensation, defendant and the United States Fidelity & Guaranty Company, insurer, bring certiorari.    Affirmed.

*William C. Brown* (*Charles M. Humphrey* and *Washburn, Bailey & Mitchell,* of counsel), for appellants.

*Edward W. Massie,* for appellees.

MCDONALD, J.    This is certiorari to review an award of the department of labor and industry.    The plaintiffs are the widow and three minor children of Carl Arnested, who was killed on the 11th day of November, 1921, while employed as general foreman of defendant John E. McNicholas, a road contractor. The parties lived at Marenisco, Michigan.    Mr. McNicholas had built a cottage on Lake Gogebic about five miles from the main highway.    He desired to cut a trail from the road to the cottage sufficient to accommodate a horse and wagon.    The way was rough and hilly and covered with virgin timber.    On the 8th day of November, 1921, the decedent, under instructions from his employer, took four other employees and began work on the trail.    With one Olson he occupied himself in selecting the route and blazing the way for the other workmen, who were cutting the brush and grading the road.    By the morning of November 11th, the trail had been blazed for the entire distance, but the route was not satisfactory to Arnested, and there is evidence that he was looking for a better one.    A truck was used to convey the men from Marenisco to the junction of the main road

and the trail.    On the morning of November 11th, the men left the truck at the junction and Arnested remained to park it.    That done he followed them and about 10 o'clock reached the place where they were at work.    Staying there but a short time he continued along the trail.    He was not thereafter seen alive by anyone.    About an hour after he left them the men heard several rifle shots.    Early in the afternoon his body was found on a hill a short distance from the trail.    He had been shot under the armpit of the right arm.    On the body was found a note in decedent's handwriting which read: "Somebody shot me.    Goodbye, Mamie."    The deer season was open, and the locality was much frequented by hunters.    It seems to be conceded that he was shot by a stray bullet or was the victim of the carelessness of some hunter, who mistook him for a deer.    It was the custom for some of the workmen employed in that locality to carry rifles during the deer season.    The decedent did so.    He had shot a deer the day before and had his rifle with him at the time of his death. As dependents, his wife and children presented a claim for compensation which the commission allowed.

The defendants are here asking that the award be vacated for the reason that the accident, which resulted in the decedent's death, did not arise out of and in the course of his employment.

In its findings the commission said:

"We think the testimony clearly shows that deceased was looking for a better trail at the time he met with the fatal accident.    He was found at the spot where he had told his men he intended looking for a better route."

Was the decedent engaged in his employment at the time of the accident?    The evidence shows that the decedent was assisted in blazing the trail by an em-

ployee named Olson.   Referring to the day of the accident, Mr. Olson testified:

"Q. You know that on this day you were still unsatisfied with this trail and were looking for a better trail to be graded on leveler surface?
"A. Yes, sir.
"Q. You also knew that Mr. Arnested was looking up a better trail, as you men were working along there?
"A. Yes, sir.   He was telling me that there must be a better place for a road than this.
"Q. And he was looking for that this day?
"A. I presume he was from what he said.   *   *   *
"Q. You were still looking for better routes on this day that Arnested was killed?
"A. Yes.
"Q. There was no definite route decided on at that time?
"A. Just temporary places.
"Q. And you were always looking for a better place to build that road?
"A. Yes.   *   *   *
"Q. The place where his body was found was out in that part of the country here—that is, where he had previously mentioned you ought to get through the hill without encountering Alligator Point?
"A. Yes.   His intention was getting back of those hills.
"Q. And that is where his body was found?
"A. He was on top of that hill."

From this evidence the commission infers that decedent was looking for a better trail at the time of the accident, and was therefore in the course of his employment.   This conclusion would probably pass unquestioned were it not for the fact that the decedent had a rifle with him.   From this the defendants argue that it is as reasonable to believe that he was hunting as that he was engaged in looking for a better trail.   We do not think so, in view of the general custom of the workmen to carry guns with them while at work in this locality during the hunting

season. We think the inference drawn by the commission is more reasonable and consistent with the established facts. It is true the testimony is slight, but as we have frequently said, we are not concerned with the weight of the evidence. If there is any to support the findings they will be upheld.

But counsel for the defendants further contend that though the injury was received in the course of his employment, it cannot be said to have arisen out of it, because the hazard was not specially incident to the employment but was common to anyone in the locality whether employed or not in this business. We are unable to agree with this contention. The decedent was general foreman for Mr. McNicholas in concrete construction, and the building of roads. He was taken from a safe place to work by his employer and set to blazing a trail in the woods, where he was exposed to being mistaken for a deer and shot by some careless hunter, or where he might fall a victim to a stray bullet. This was a special hazard incident to his employment in such locality. The commission rightfully said in its findings:

"His work required him to be where he was shot, and, but for his work, it could not be said that he would have been subject to this particular danger."

See *Hopkins* v. *Michigan Sugar Co.*, 184 Mich. 87 (L. R. A. 1916A, 310).

Upon a consideration of all the facts and circumstances, we think the accident happened during the course of his employment and arose out of it.

The award is affirmed, with costs to the plaintiffs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.