### LE VASSEUR *v.* ALLEN ELECTRIC COMPANY.

1. WORKMEN'S COMPENSATION—ELECTRICIAN—STREET HAZARDS.

    Electrician who received call from employer while at home to proceed to a school to hook up a cable for an electric range in the home economics department, who would normally be entitled to pay from time he left home until his return thereto and who was injured en route by limb which fell from a tree suffered a compensable injury, since the employment required the employee to go upon the public street upon a special mission for the employer (CL 1948, § 412.1 *et seq.*).

2. EVIDENCE—JUDICIAL NOTICE—FALLING LIMBS.

    The Supreme Court takes judicial notice of the fact that limbs of trees do not fall without some intervening force unless they have rotted.

3. COURTS—PRECEDENTS—EQUALLY DIVIDED COURT.

    A case decided by an equally divided court does not constitute a binding precedent.

4. WORKMEN'S COMPENSATION—STREET HAZARDS.

    The fact that the public is also exposed to perils of the public streets does not preclude recovery of workmen's compensation for injuries to an employee who suffers injury by reason of street hazard while on a special mission of the employer.

    DETHMERS, C. J., and SHARPE and REID, JJ., dissenting.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 58 Am Jur, Workmen's Compensation §§ 217, 219, 226.

[1, 4] Street risks incurred in course of employment.  51 ALR 509; 80 ALR 126.

Death or injury in course of traveling.  20 ALR 319; 49 ALR 454; 63 ALR 469; 100 ALR 1053.

Injury to employee in course of employment but away from employer's place of business, due to a cause or risk to which others are also subject, as arising out of the employment within workmen's compensation act.  139 ALR 1472.

Injury while on way to or from work sustained by employee who does not work regular hours or is subject to call.  142 ALR 885.

Right to compensation for injury while going to or from work as affected by fact that compensation covers time involved or cost of transportation, or both.  87 ALR 250.

[3] 14 Am Jur, Courts § 81.

Appeal from Workmen's Compensation Commission. Submitted June 3, 1953. (Docket No. 27, Calendar No. 45,637.) Decided November 27, 1953.

George Le Vasseur presented his claim for compensation against Allen Electric Company, employer, and State Accident Fund, insurer, for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Roy De Gesero,* for plaintiff.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for defendants.

BUTZEL, J. George Le Vasseur, plaintiff, was employed by Allen Electric Company of Bay City, Michigan, defendant, at its shop as a journeyman electrician. He also was sent out to do special jobs for customers. When acting in the latter capacity he was paid from the time he left the shop until his return and he received additional reimbursement at the rate of 8 cents per mile when he used his own car.

Because of a shortage of materials, defendant requested plaintiff to remain home until further notice. During the noon hour on September 12, 1950, defendant called plaintiff at his home and requested him to go to the Central High School in Bay City to hook up a cable for the electric ranges in the home economics department. Plaintiff's regular afternoon hours while at the shop were from 12:30 p.m. to 4:30 p.m. He claims that the telephone call reached him at 12:35 p.m., although defendant contends that it was 12:15 p.m., and that from 12:00 noon to 12:30 p.m. was the half-hour lunch period. In any event, plaintiff, after placing his tools in his car, set out for the school traveling along the most direct route. While driving along the road a limb fell

from a tree onto the car, penetrated the canvas top and struck plaintiff. It knocked him unconscious so that he lost control of the car, which crashed into a tree. Plaintiff suffered severe injuries and incurred large bills for hospital care and doctors' and nurses' services. He was able to return to work in about 3 months. The workmen's compensation commission affirmed an award of compensation made by the deputy commissioner against defendant and State Accident Fund, codefendant, who have appealed in the nature of certiorari. They contend that plaintiff's injuries did not arise out of and in the course of his employment as required by statute, CL 1948, § 412.1 (Stat Ann 1950 Rev § 17.151). They base their claim partly on the fact that plaintiff had not yet arrived at the high school, and that the injuries sustained going to and from work are not compensable. Testimony shows that plaintiff would normally be entitled to pay from the time he left home until his return when sent on a special job. Also, this is not the ordinary case of an employee going to and from his work but one where the employee was engaged in a special mission in the interest of and at the direction of his employer. See *Stockley* v. *School District No. 1 of Portage Township,* 231 Mich 523 (24 NCCA 170).

Defendants insist that plaintiff's injuries did not arise out of his employment. They cite *Nelson* v. *Country Club of Detroit,* 329 Mich 479; *Klawinski* v. *Lake Shore & Michigan Southern R. Co.,* 185 Mich 643 (LRA 1916A, 342); and *Thier* v. *Widdifield,* 210 Mich 355, all lightning cases where the injury occurred through an "act of God." In the instant case there was no storm or unusual weather conditions at all. Without objection, plaintiff was permitted to testify that he did not see the limb fall, but that he had been told that it was "a little decayed," and that it was 6 to 8 inches thick. We believe we can safely

assume that the information was correct, for limbs
of trees do not fall without some intervening force
unless they have rotted. Such a limb should have
been removed for it constituted as much of a menace
on the highway as any obstruction the car might have
run into. Defendants further rely upon *Levchuk* v.
*Krug Cement Products Company,* 246 Mich 589,
wherein the employee was struck by flying glass when
a pheasant flew into and shattered the windshield
of a truck in which he was riding in the course of his
employment. Our decision there that the injury did
not arise out of the employment was by an equally
divided court, so that case is not binding upon us as
a precedent. In the later case of *Morse* v. *Port
Huron & Detroit R. Co.,* 251 Mich 309, we said:

"Defendant contends that the accident did not
arise out of Morse's employment because the street
hazard was not peculiar to his work but was common
to the neighborhood and a risk to which all persons
in the street were subject. The nebulosity originally
enveloping the rule invoked has been considerably
dissipated by later cases. We need not spend the
time to trace the change. It is sufficient to say that
it is the rule in this State that if the employment re-
quires an employee to go upon the public street, the
ordinary hazards of the street are incurred in the
course of the employment."

In *Widman* v. *Murray Corporation of America,* 245
Mich 332, an employee was required to travel by
train in the course of his employment, and while so
traveling was struck in the eye by a cinder. In affirm-
ing an award of compensation we quoted with ap-
proval from *Harry Cook's Case,* 243 Mass 572 (137
NE 733, 29 ALR 114), as follows:

"When these hazards thus become connected with,
and incidental to the employment, and are the direct
cause of the accident, such accidents arise out of, as
well as in the course of the employment. And the

fact, that others engaged in their own affairs are more or less exposed to the same street risks, does not preclude recovery by an employee who is necessarily exposed to them in performing the duties of his employment contract."

We believe that the rule applicable to this class of cases is well stated in *Katz* v. *A. Kadans & Company,* 232 NY 420 (134 NE 330, 23 ALR 401), wherein the court of appeals said:

"If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute."

The court further said that:

"Particularly on the crowded streets of a great city, not only do vehicles collide, pavements become out of repair, and crowds jostle, but mad or biting dogs may run wild, gunmen may discharge their weapons, police officers may shoot at fugitives fleeing from justice, or other things may happen from which accidental injuries result to people on the streets, * * * and do not commonly happen indoors."

See, also, our own decisions in *Kunze* v. *Detroit Shade Tree Company,* 192 Mich 435 (LRA 1917A, 252), where the employee was injured while boarding a streetcar while traveling from job to job in the course of his employment, and *Arnested* v. *McNicholas,* 223 Mich 488, where the employee was shot by an unknown deer hunter while searching for a route over which to construct a roadway through the woods. In both these cases we held that the employees' injuries arose out of their employment. A number of cases from other jurisdictions holding that street injuries are compensable as arising out of the employment when it is the employment itself that places the employee on the street may be found

in 80 ALR 126 and many supplemental decisions listed in the ALR blue books.

The award of compensation is affirmed, with costs to plaintiff.

Adams, Carr, and Bushnell, JJ., concurred with Butzel, J.

Dethmers, C. J. (*dissenting*). I do not concur in affirmance. Mr. Justice Butzel and plaintiff stress the special mission doctrine. What is its significance? It is held generally that injuries sustained by employees while en route to or from work do not arise out of and in the course of their employment. *Daniel* v. *Murray Corporation of America,* 326 Mich 1, 6, and cases there cited. An apparent exception is noted in the case of the special mission, a brain child of judicial construction not mentioned in the statute. The theory is that while traveling en route to or from work on a special mission the employee is actually in the performance of duties for his employer and that, therefore, an injury then sustained arises "in the course of" his employment. Touching on whether it also arises "out of" his employment, this Court has held that it does, if caused by one of the ordinary hazards of the street or traffic or of the place where or of the means by which the mission is performed, such hazards being deemed connected with and incident to the employment. *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich 435 (LRA1917A, 252); *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich 462; *Arnested* v. *McNicholas,* 223 Mich 488; *Stockley* v. *School District No. 1 of Portage Township,* 231 Mich 523 (24 NCCA 170); *Favorite* v. *Kalamazoo State Hospital,* 238 Mich 566; *Widman* v. *Murray Corporation of America,* 245 Mich 332; *Morse* v. *Port Huron & Detroit R. Co.,* 251 Mich 309; *Konopka* v. *Jackson County Road Commission,* 270 Mich 174

(97 ALR 552); *Chrysler* v. *Blue Arrow Transport Lines,* 295 Mich 606. There is nothing· in the workmen's compensation act to indicate a legislative intent, nor anything in the cited or related cases to suggest, however, that an injury sustained while en route to or from work on a special mission must be held to arise "out of" employment regardless of the source or cause, or that the granting of compensation may be justified on the single ground.that it was because of his employment that the employee happened to be at the place when and where the accident happened, without a showing of any causal connection between the injury and the employment in the shape of unusual exposure to the hazard in question. On the contrary, the cited cases go no further than to hold that the effect of the doctrine of special mission is to take an employee injured en route to or from work on a special mission out of the position of the ordinary employee injured while going to or from his regular place of work in his employer's established place of business and to place him, instead, in a position comparable to that of a truck driver injured while driving truck in the performance of his duties for his employer. There has never been any question that under such circumstances injuries sustained by truck drivers resulting from the hazards of the road and traffic arise out of and in the course of their employment. See *Daniel* v. *Murray Corporation of America, supra,* p 14, and *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich 89. As the compensation act extends its benefits to a person employed in a manufacturing establishment in relation to injuries resulting from the ordinary hazards of the factory, so it likewise extends them to a person whose duties of employment must be performed on the highways in relation to the ordinary hazards of the street and traffic. Each is protected against the ordinary hazards common to his place of employment. In neither

case does the act go beyond that. Applicable to both situations is our holding in *Luteran v. Ford Motor Company,* 313 Mich 487, that an injury arises out of employment when there is a causal conection between it and the conditions under which the employee's work is to be done or, as held in *Daniel,* when the injury follows as a natural incident to the employment and is not the result of a risk disassociated therefrom. Example of a case in which the injury was held to be the result of a risk disassociated from employment, and fully in point here, is *Steffes v. Ford Motor Co.,* 239 Mich 501. There an eye injury sustained by a foreman in a tool grinding room, resulting from a fellow employee's idle shooting of a paper clip with a rubber band (an act not connected with or necessary to the work), was held not to have arisen out of his employment. In that case the Court spoke of a bird flying into the room from the outside and striking the foreman in the eye as illustrative of a situation in which the injury could not be said to have arisen "out of" the employment. Similar is *Ryan v. City of Port Huron,* 234 Mich 648, in which an employee was engaged in street cleaning when a storm arose and he sought shelter in a nearby private garage, whereupon he was attacked and bitten by a dog. No point was made of the fact that the employee had left the street and gone to a private garage; on the contrary, this Court assumed that he was still "in the course of his employment" but held, nonetheless, that the injury "did not arise out of the employment." This Court said:

"Being bitten by a dog cannot be traceable to the nature of the employment in which Mr. Ryan was engaged. There was not the slightest causal connection between them. The risk of being bitten by a dog was no greater to him because of his employment than it was to any member of the public, who chanced

to be in the locality. The accident did not arise out of his employment."

So here, being struck by a falling limb cannot be traceable to the nature of the employment in which plaintiff was engaged and there was not the slightest causal connection between them. Mr. Justice BUTZEL cites *Arnested* v. *McNicholas, supra,* in which the employee was killed by gunfire while required by his employer to perform a special mission in a place of known danger where deer hunting was in progress during open season, the death being held to have resulted from injuries arising out of the employment. The distinction between *Arnested* and *Steffes, Ryan,* or the instant case is clear on the facts. To make the facts in the latter 3 cases comparable so as to call for application of the same rule and for the same result as in *Arnested* it would be necessary to conjure up a situation in each, under which, in *Steffes,* the foreman's eye would have been struck by a paper clip while he was performing a special mission in an area of known danger where a paper-clip-shooting contest was in progress; or, in *Ryan,* the employee would have been bitten while performing a special mission in an area of known danger where the presence of vicious dogs rendered the locality hazardous; or, in the instant case, plaintiff would have been struck by a falling limb while performing a special mission in an area of known danger where, customarily, trees were being felled and branches sawed out of trees. In each such situation the noted hazard would be, as in *Arnested,* an ordinary hazard of the place of employment, becoming connected with and incident to the employment. In the instant case, however, the falling branch was not an ordinary hazard of the street or traffic or of a place in which plaintiff was required to be. On the other hand, neither was the risk or danger in connection therewith peculiarly in-

cident to plaintiff's work or greater to him because of his employment than it was to any member of the public who chanced to be in the locality.

In point are *Klawinski* v. *Lake Shore & Michigan Southern R. Co.,* 185 Mich 643 (LRA1916A, 342); *Thier* v. *Widdifield,* 210 Mich 355; and *Nelson* v. *Country Club of Detroit,* 329 Mich 479, referred to by Mr. Justice BUTZEL as the "lightning cases where the injury occurred through an 'act of God.' " The applicability of those cases is in no wise diminished by the fact that "there was no storm or unusual weather conditions" or that the limb was "a little decayed." Bouvier's Law Dictionary (Rawle's 3d Rev) defines an act of God as:

"Any accident due to natural causes directly and exclusively without human intervention."

In *Tobin* v. *Lake Shore & Michigan Southern R. Co.,* 192 Mich 549, this Court said:

"An 'act of God' is defined as 'Inevitable accident without the intervention of man or the public enemy.' 29 Cyc p 441."

In *Jacobs* v. *Hagenbeck-Wallace Shows,* 198 Mich 73 (LRA1918A, 504, 16 NCCA 535), this Court approved an instruction that "an act of God may be defined as a natural cause." These definitions and the holdings in the cited "lightning cases" indicate no varying rule of law to be applied to injuries resulting from different, unexpected occurrences occasioned by the moving forces of nature, one if it be a descending bolt of lightning and another if a falling branch, dropped through natural causes and the forces of nature without human intervention or negligence. Whether it be by lightning, such falling branch, a dog bite, as in *Ryan,* or a flying pheasant, as in *Levchuk* v. *Krug Cement Products Co.,* 246 Mich 589, and as mentioned in *Steffes,* the injury does not

arise out of the employment.   In this connection,
it is to be noted that there is not one scintilla of
evidence in the record to establish, or any from which
the reasonable inference may be drawn, that the
slightly decayed condition of the branch, its presence
in the tree, or its falling into the street, was in any-
wise due to human negligence.

The language first employed by this Court in
*Klawinski,* and quoted with approval in *Thier* and
*Nelson,* with reference to injuries caused by light-
ning is equally applicable to the injury here caused
by a falling limb, namely:

"It is clear   *   *   *   that this injury was in no
way caused by or connected with his employment
through any agency of man which combined with the
elements to produce the injury; that plaintiff's de-
cedent by reason of his employment was in no way
exposed to injuries from lightning other than the
community generally in that locality."

as is, also, the following from *Nelson:*

"There is no showing that plaintiff here was, by
reason of his employment, in any way exposed to in-
juries from lightning other than the community gen-
erally in the locality in question or that there was
anything about his employment which, through any
agency of man, combined with the elements to pro-
duce the injury."

and the following from *Thier:*

"We conclude by saying that, in our opinion, there
is in the instant case no evidence tending to prove
that the death was brought about by the extra haz-
ardous nature of the employment.   As was said by
the English court, it is not enough for the applicant
to say, 'the accident could not have happened if I
had not been engaged in the employment, or if I
had not been in this particular place.'   The applicant
must go further and say, 'the accident arose because

of something I was doing in the course of my employment, and because I was exposed by the nature of my employment to some particular danger.' "

There is no magic in the term "special mission" which can operate to make an employer more liable to an employee on a special mission than he would be to an employee at work in the employer's established place of business for injuries resulting from lightning, biting dogs, falling limbs, or other causes disassociated from the employment, so long as the special mission in no way exposed the employee to such dangers other than the community generally in that locality.

Plaintiff seeks to distinguish the case at bar from the cited "lightning cases" on the factual basis that in *Thier, Klawinski* and *Nelson:*

"The injured party selected his own position at the time of accident, no duty was being performed that was a regular part of the work, nothing beneficial was being done for the employer, and the employee was serving himself in protecting himself from the weather and storm."

An examination of the opinions in those cases discloses that these distinguishing features on the facts were not treated as determinative factors in the decisions. On the contrary, the controlling tests applied were as set forth in the language above quoted from the opinions in those cases.

To sum up, this is neither a case of injury resulting from the ordinary hazards of the place of employment, nor, on the other hand, of employment occasioning an unusual exposure to an extraordinary hazard to a degree beyond that of others in the community generally. The award should be reversed and set aside, with costs to defendants.

Reid, J., concurred with Dethmers, C. J.

SHARPE, J. (*dissenting*).  A fair statement of the
facts in the instant case appears in Justice BUTZEL's
opinion.  Admitting that the employee was injured
"in the course of" his employment does not admit
that the injury "arose out of" that employment.  In
*Levchuk* v. *Krug Cement Products Company,* 246
Mich 589, a divided court sustained the commission
and the contention of defendants that the injury
of plaintiff did not "arise out of" his employment
even though it occurred "during the course of" that
employment.  In that case plaintiff reported for
work at defendant's manufacturing plant in Detroit
where he was picked up to be taken to a gravel pit
several miles outside of the city.  His duties con-
sisted of taking charge of the gravel pit and assist-
ing in loading trucks.  Before reaching the gravel
pit, a fowl of some kind flew against the windshield
and shattered the glass causing the loss of an eye.
In that case the Court said:

"Unless the proof justifies us in concluding that
this particular risk or danger which resulted in
plaintiff's injury was one which was peculiarly in-
cident to his work as the caretaker and watchman of
a gravel pit, it cannot be said that the accident arose
out of his employment.  Surely, it cannot be said
that the risk or probability of the plaintiff's being
injured by a pheasant or other fowl flying into the
windshield of a motor vehicle in which he was riding
was any greater because of the fact of his particular
employment as a watchman or caretaker than would
have been the risk or probability of injury to any
other traveler in an automobile in the same locality."

Further, in that case the Court held that lightning
cases presented substantially the same situation:

"In each of the cited cases this Court held that
the accident resulting from the building or the person
being struck by lightning did not arise out of the
employment; and likewise it must be held in the

instant case that the pheasant striking the windshield and thereby causing plaintiff's injury did not arise out of the employment."

In the instant case Justice BUTZEL argues that the lightning cases are not controlling because the injury occurred through an "act of God." See *Klawinski* v. *Lake Shore & Michigan Southern R. Co.*, 185 Mich 643 (LRA1916A, 342); *Thier* v. *Widdifield*, 210 Mich 355; and *Nelson* v. *Country Club of Detroit*, 329 Mich 479. It does not appear in the record that any human agency combined with the forces of nature to cause the limb to fall. There was a mild breeze blowing. There is hearsay evidence that the limb was a "little decayed." Nothing more appears to show why that limb fell, it would seem to be one of those natural happenings which in its suddenness is wholly unexpected. Ordinarily prudent persons do not inspect the limbs of each tree along a street they are about to travel. In many cases careful inspection would not discover the unsound limb about to fall. In its suddenness the falling of a limb is similar to lightning. In 2 Words and Phrases, p 169 a number of definitions of an "act of God" may be found, including the following:

"The distinguishing characteristic of an 'act of God' is that it proceeds from the forces of nature alone, to the entire exclusion of human agency. *Rice* v. *Oregon Short Line R. Co.*, 33 Idaho 565 (198 P 161)."

"Natural causes which directly and exclusively, without human intervention, produce damages not preventable by any reasonable foresight and care, constitute 'act of God' for which no liability exists; rule being otherwise if defendant's negligence cooperates. *Perkins* v. *Vermont Hydro-Electric Corporation*, 106 Vt 367 (177 A 631)."

However, it does not seem to me critical to the argument that the falling limb be held to be an "act of God." The point is that the factual distinction between the lightning cases and the instant case made by Justice Butzel is not substantial. He does not attempt any distinction between the *Levchuk Case, supra,* and the instant case. Instead, he relies on *Stockley* v. *School District No. 1 of Portage Township,* 231 Mich 523 (24 NCCA 170); *Morse* v. *Port Huron & Detroit R. Co.,* 251 Mich 309; *Widman* v. *Murray Corporation of America,* 245 Mich 332; *Katz* v. *A. Kadans & Company,* 232 NY 420 (134 NE 330, 23 ALR 401); *Kunze* v. *Detroit Shade Tree Company,* 192 Mich 435 (LRA1917A, 252); and *Arnested* v. *McNicholas,* 223 Mich 488. He also points to 80 ALR 126 for a collection of cases holding that street injuries are compensable as arising out of the employment "when it is the employment itself that places the employee on the street."

The *Stockley Case, supra,* involves a teacher who was injured while en route to attend an institute which she was required to attend. The car in which she was riding was struck by an interurban railway car and she was killed. In that case the general rule is recognized that when an employee is injured away from his place of employment while going to and from his work the injury does not arise out of his employment. However, the Court holds that that case fell within an exception to the general rule where an employee is doing some special service or discharging some duty incidental to the nature of his employment in the interest of or under direction of his employer. However, it must be recognized that critical to the decision is the fact that in that case the employee was required to make a journey of 12 miles away from her home and regular place of employment and thereby subjected to greater hazards

of travel than she would ordinarily experience in traveling to and from work.

"The criterion is not necessarily that others are exposed to the same dangers of travel, but whether with reference to the nature of his employment the performance of a special service within the scope of such employment, in the interest of or by direction of his employer, particularly subjects an employee to the *added danger* out of which the accident arises." (Emphasis supplied.)

It is questionable in the instant case whether the employee was subjected to any "added danger." It seems to me that in traveling to Central High School he was not subjected to any greater danger from the hazards of travel than if he was on his way to his regular place of employment.

In the *Morse Case, supra,* the defendant's employee after ordinary working hours had the duty of making bank deposits, and while on his way to make such a deposit he was struck by a car which resulted in his death. In that case the comment of Chief Justice Wiest concurring in affirmance is illuminating:

"I concur in the result. The employee was in the street, about the business of his employer, therefore the accident, incident to a hazard in using the street, arose out of and in the course of his employment.

"Beyond deciding the case before us, I do not care to be committed."

That case is different than the instant case in that in that case the carrying of the deposit to the bank was the service to be performed by the employee. Not so, in the instant case. In the instant case the employee was on the way to perform the service.

The *Widman Case, supra,* offers nothing new. In that case the employee was sent from Chicago to the west coast on business of the employer. While riding in the observation car of a train he was struck

in the eye by a cinder.   The Court disposed of that case with the familiar language:

"We think it must be said that the very nature of the occupation of the deceased itself exposed him to the unusual risk and danger of an accident of this nature."   Quoted with approval from *Kunze* v. *Detroit Shade Tree Co.,* 192 Mich 435, (LRA1917A, 252).

Applied to the instant case it cannot be said that the *very nature* of the duties of an electrician on his way to hook up several electric ranges involved any unusual risk of being struck by a falling limb.

The *Katz Case, supra,* involves a dairyman's chauffeur who was on the streets in performance of his duties when stabbed by a madman.   Again a factual distinction appears when compared with the instant case in that in that case the service performed by the employee was performed on the streets.   However, there is language in that case peculiarly applicable to the case at bar:

"Cases may arise where one is hurt in the street, but where the risk is of a general nature, not peculiar to the street.   Lightning strikes fortuitously in the street; bombs dropped by enemy aircraft do not expose to special danger persons in a street as distinguished from those in houses.   *Allcock* v. *Rogers,* [1918] House of Lords, 11 BWCC 149 (87 LJKB 693, 118 LT 386, 34 TLR 324, 62 SJ 421).   The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer."

As applied to the instant case the risk of being struck by a falling limb is not a risk peculiar to the street any more than is the risk of being struck by lightning.

The *Kunze Case, supra,* involves an employee engaged in trimming and planting trees. He was injured while proceeding from one job to another. The Court said:

"We think it must be said that the very nature of the occupation of the deceased itself exposed him to the unusual risk and danger of an accident of this nature."

The decision of Justice BUTZEL may be justified on the ground that it is within a group of cases representing an established exception to the general rule that ordinarily injuries to an employee while going to and from work are not regarded as arising out of and in the scope of his employment when the employee is on his way to perform some special service or to discharge some duty incidental to the nature of his employment or in the interest of or under the direction of his employer or where the employee is on his way home from such a mission. Cases of this character are collected in 142 ALR 885. However, that exception recently has been repudiated in Michigan. In *Phillips* v. *Fitzhugh Motor Company,* 330 Mich 183, the injured employee was returning home after having rendered a service to his employer, while in the case at bar the employee was going to a place where he could render a service to his employer. The writer of this opinion wrote the dissenting opinion in the *Phillips Case.* I now feel bound by the majority opinion in that case. The majority opinion in the *Phillips Case* relies on *Daniel* v. *Murray Corporation of America,* 326 Mich 1:

"In order that compensation may be due the injury must both arise out of and also be received in the course of the employment. Neither alone is enough." Quoted with approval from the *McNicol's Case,* 215 Mass 497 (102 NE 697, LRA1916A, 306).

The opinion of Mr. Justice Butzel eliminates the element of injuries that arise out of employment. Some causal connection between the risk that resulted in the injury and the duties of employment should be required. In the case at bar the risk of being struck by a falling limb while traveling on a public highway had no connection with the employee's duties of hooking up electric ranges at the high school. For the reasons above stated I concur in reversal, with costs to defendants.

Boyles, J., did not sit.