# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JESSE JAMES SWEENEY,

        Defendant-Appellant.

UNPUBLISHED
June 13, 2017

No. 330662
Barry Circuit Court
LC No. 14-001015-FC

Before: SWARTZLE, P.J., and SAAD and O'CONNELL, JJ.

PER CURIAM.

Defendant, Jesse Sweeney, was convicted, following a jury trial, of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f), and domestic violence, second offense, MCL 750.81(4). The trial court sentenced Sweeney as a second-offense habitual offender, MCL 769.10, to serve concurrent terms of 180 to 480 months for the CSC I conviction and 366 days for the domestic violence conviction. Sweeney appeals as of right. We affirm.

## I. FACTUAL BACKGROUND

On the night of October 31, 2014, and in the early morning of November 1, 2014, Sweeney and the complainant were dating, had a child together, and lived together. That night, the couple went to bed, fell asleep, and later awoke in the early morning hours of November 1. Both testified that Sweeney wanted to have sex, Sweeney hit the complainant, and then the couple had sex.

The couple disagreed on the number of times Sweeney hit the complainant and whether the sex was consensual. The complainant testified that Sweeney punched her about 20 times in the face, while Sweeney testified that he only hit her twice. The complainant did not describe the sex as consensual. She testified that she knew that Sweeney was going to rape her, but she did not want to get pregnant, so she threw a condom at Sweeney. Sweeney testified that he apologized and believed that the complainant wanted to have sex with him.

The prosecutor charged Sweeney with aggravated domestic violence, MCL 750.81a(3), and CSC I, and the case proceeded to a jury trial. The trial court declared a mistrial in light of comments defense counsel made in opening statements, and the case proceeded to a second trial. Ultimately, the jury convicted Sweeney of the lesser included charge of domestic violence, second offense, and CSC I.

-1-

## II. DOUBLE JEOPARDY

Sweeney argues that he should have been able to present a defense to the jury that the prosecutor overcharged him because the prosecutor's daughter was friends with the complainant. Sweeney further argues that the trial court abused its discretion when it granted a mistrial after he raised the defense in his opening statement. Finally, Sweeney argues that manifest necessity did not require a mistrial, and therefore, the trial court erred in failing to dismiss the charges based on double jeopardy. We disagree.

We review a trial court's decision to exclude evidence, *People v McCray*, 245 Mich App 631, 634-635; 630 NW2d 633 (2001), and decision that manifest necessity required a mistrial for an abuse of discretion, see *People v Lett*, 466 Mich 206, 218; 644 NW2d 743 (2002). A trial court abuses its discretion when it makes a decision that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We review constitutional issues de novo, including double jeopardy claims. *People v Ream*, 481 Mich 223, 226; 750 NW2d 536 (2008).

The United States Constitution, US Const, Am V, and the Michigan Constitution, Const 1963, art 1, § 15, "prohibit placing a defendant twice in jeopardy for the same offense." *People v Ackah-Essien*, 311 Mich App 13, 31; 874 NW2d 172 (2015). When a defendant has chosen to be tried by jury, jeopardy attaches when the jury is selected and sworn. *People v Mehall*, 454 Mich 1, 4; 557 NW2d 110 (1997). The defendant then has a constitutional right to have his case completed and decided by that tribunal. *People v Henry*, 248 Mich App 313, 318; 639 NW2d 285 (2001). Therefore, if the trial court declares a mistrial after jeopardy has attached, double jeopardy bars retrial if a judge or prosecutor acts in bad faith to "threaten[] the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant." *Arizona v Washington*, 434 US 497, 508; 98 S Ct 824; 54 L Ed 2d 717 (1978) (internal quotations, alterations, and citations omitted).

Accordingly, "[t]he Double Jeopardy Clause does not bar all retrials." *People v Dawson*, 431 Mich 234, 252; 427 NW2d 886 (1988). "Neither party has a right to have his case decided by a jury which may be tainted by bias." *Washington*, 434 US at 516. Therefore, a defendant's "valued right to have the trial concluded by a particular tribunal [can be] subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id*. at 505. For example, double jeopardy will not bar retrial if the cause of the mistrial was outside the control of the prosecutor or trial judge, such as when defense counsel's misconduct warrants a mistrial. *Dawson*, 431 Mich at 252, 252 n 45. Accordingly, "the trial judge must have the power to declare a mistrial." *Washington*, 434 US at 513.

If a trial court sua sponte declares a mistrial, it must find that the mistrial was manifestly necessary. *Dawson*, 431 Mich at 252. Manifest necessity warranting a mistrial can occur when "[a]n improper opening statement" biases and taints the entire jury pool, "frustrat[ing] the public interest in having a just judgment reached by an impartial tribunal." *Washington*, 434 US at 512-513. Appellate courts defer to the trial court on the proper remedy for an improper opening statement unless the trial judge acted irrationally or irresponsibly. *Id* at 514-515. The trial court is most familiar with the case's background, the tone of the arguments made, and the reaction of

the jurors to any improper argument. *Id*. at 513-514. To facilitate appellate review, the trial court must provide "sufficient justification for the . . . ruling." *Id*. at 516-517.

To determine whether double jeopardy barred retrial in this case, we must first determine whether Sweeney had a right to present his defense of prosecutor bias to the jury. In opening statements, defense counsel stated: "When this is done, you're gonna reach some conclusions. I think one of 'em you're gonna reach is that the prosecutor overcharged this. I think you're gonna reach the conclusion that's because in part [the complainant] is close friends with the prosecutor's daughter." The prosecutor objected. The trial court concluded that defense counsel knew that the comment would be "improperly perceived by the jurors," determined that the comment caused "prejudice against the prosecutor from the jury," and precluded Sweeney from introducing the evidence upon retrial.

If a prosecutor has a personal conflict of interest, the prosecutor assigned to the case or the entire prosecutor's office may be disqualified. *People v Mayhew*, 236 Mich App 112, 126-127; 600 NW2d 370 (1999). If a prosecutor engages in selective prosecution, a defendant can move to dismiss a charge, see *Wayte v United States*, 470 US 598, 604, 607-608; 105 S Ct 1524; 84 L Ed 2d 547 (1985), or object to binding a charge over to circuit court, *People v Barksdale*, 219 Mich App 484, 486-488; 556 NW2d 521 (1996). On appeal, Sweeney argues that prosecutor bias, resulting in overcharging, can be attacked in a third way: the prosecutor should stay on the case, defendant should be tried on the charges, and defendant can attack the charges by arguing prosecutor bias to the jury. Sweeney must support his arguments on appeal with citation to supporting authority. See MCR 7.212(C)(7). Yet, he cited no authority supporting his claim that he could present such a defense to the jury. Therefore, we cannot conclude that the trial court abused its discretion in excluding the evidence.

Next, we must consider whether the trial court abused its discretion in determining that offering the evidence constituted a manifest necessity warranting a mistrial. The trial court stated that Sweeney was "well aware of this issue," yet failed to file a motion for a change of venue or another pretrial motion alleging prosecutor misconduct. Instead, the trial court stated Sweeney alleged prosecutor bias in his opening statement "knowing that it's gonna be improperly perceived by the jurors" "to create an appeal issue." Additionally, the trial court noted that it was not aware of any "curative instruction" that could "remove that prejudice against the prosecutor from the jury." This rational justifies the trial court's conclusion that a mistrial was manifestly necessary. See *Washington*, 434 US at 516-517. Sweeney's opening statement biased and tainted the jury, frustrating the public interest in having a just judgment reached by an impartial jury. See *id*. at 512-513. Therefore, we cannot conclude that the trial court acted irrationally or irresponsibly in declaring a mistrial. See *id*. at 514-515.[1]

---

[1] Sweeney's argument that the trial court followed improper procedure when granting a mistrial lacks merit. Sweeney cited *People v Benton*, 402 Mich 47, 61; 260 NW2d 77 (1977) (opinion of LEVIN, J.), for the proposition that a trial judge "should" hold a "hearing on the record" and then "make explicit findings . . . that no reasonable alternative exists" "[b]efore a trial judge *sua sponte* declares a mistrial." (Emphasis in original.) However, Levin's opinion is one of two

Finally, we reject Sweeney's double jeopardy argument. Retrial was not barred by double jeopardy because the trial court did not abuse its discretion in determining that a mistrial was manifestly necessary, see *Dawson*, 431 Mich at 252, defense counsel's conduct caused the mistrial, see *id*. at 252, 252 n 45, and Sweeney did not have the right to have his case tried by a jury tainted by bias, see *Washington*, 434 US at 516.

## III. DEFENSE MOTION FOR MISTRIAL IN LIGHT OF PROSECUTOR MISCONDUCT

Next, Sweeney argues that the trial court erred in denying his motion for a mistrial in light of prosecutor misconduct. We disagree.

We review de novo the constitutional issue of whether prosecutorial misconduct denied a defendant his right to a fair trial. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). We review a trial court's denial of a defendant's motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

Prosecutor misconduct, or the cumulative effect of several errors, can be so seriously prejudicial that it deprives a defendant his right to a fair trial. *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003). Such prejudice does not occur when a prosecutor's conduct is brief, unremarkable, or not obviously indicative of error. *Id*. at 647. Further, a defendant is not deprived his right to a fair trial when the trial court can provide a curative instruction to cure prejudice. *Id*.

Therefore, a trial court should only grant a defendant's motion for a mistrial "for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (internal quotations and citations omitted). We will not reverse a trial court's denial of a defendant's motion for a mistrial when a prosecutor improperly offers cumulative testimony. See *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Additionally, we will not reverse a trial court's denial of a defendant's motion for a mistrial when any prosecutor error can be cured by a jury instruction. See *id*.

Sweeney argues that the prosecutor's conduct of calling defense counsel "unprofessional" denied him a fair trial. The prosecutor stated in a response to one of Sweeney's objections that she "would appreciate it if [defense counsel] would stop smiling all the time and giggling. It's inappropriate and unprofessional." The trial court sustained Sweeney's objection and

opinions issued by an equally divided court. Therefore, we are not bound by his opinion. See *LeVasseur v Allen Electric Co*, 338 Mich 121, 124; 61 NW2d 93 (1953). Further, the Michigan Supreme Court clarified *Benton* in *People v Lett*, 466 Mich 206, 221-222 nn 13-14; 644 NW2d 743 (2002). The *Lett* Court explained that the requirement that the trial court examine alternate remedies is context specific and limited to "sua sponte declaration[s] of a mistrial on the basis of prosecutorial error." *Id*. Further, "the United States Supreme Court has expressly indicated that the failure of a trial judge to examine alternatives or to make findings on the record before declaring a mistrial does not render the mistrial declaration improper." *Id*., citing *Washington*, 434 US at 515-517.

examination continued. Sweeney later sought a mistrial in light of the prosecutor's comments. The trial court denied his motion and instead offered the following curative instruction: "With respect to comments that were made about defense counsel personally . . . Any inference that they did something wrong or improper by . . . the comment regarding laughing . . . has no bearing on their performance and you're not to consider any inferences that may have been drawn from that."

However, the comment did not deprive defendant of a fair trial. The comment was brief. See *McLaughlin*, 258 Mich App at 647. The trial court cured any prejudice to defendant with a jury instruction. See *id.*; *Horn*, 279 Mich App at 36. Therefore, the trial court did not abuse its discretion in denying Sweeney's motion for a mistrial on this basis.

Additionally, Sweeney argues that the trial court should have granted a mistrial because he was denied his right to a fair trial when the prosecutor introduced evidence to the jury through three, improper "speaking objections." Prosecutors may not make statements of fact or arguments to the jury based upon information that is not in evidence. *Unger*, 278 Mich App at 241. Speaking objections "contain[] more information than the judge needs to rule on [an] objection" and "are often intended to influence the jury or the witness." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 20 n 3; 837 NW2d 686 (2013).

The first speaking objection Sweeney cites is found in the prosecutor's response to a defense objection. The prosecutor asked the complainant who gave her information about the timeliness of receiving a vaginal exam. Sweeney objected, arguing that the complainant lacked "medical knowledge to know when an examination needs to be performed." The prosecutor argued that the question was "relevant because she went to get medical attention. She got medical attention for her nose and face."

However, the prosecutor did not reveal information not in evidence. Contra *Unger*, 278 Mich App at 241. The complainant had already testified that she sought medical treatment for her injuries and that an x-ray was taken of her nose. Therefore, the prosecutor's statement was cumulative. See *Horn*, 279 Mich App at 36. Thus, the trial court did not abuse its discretion in denying Sweeney's motion for a mistrial on these grounds.

Sweeney next takes issue with a second prosecutor response to a defense objection. The prosecutor asked the complainant if Sweeney "display[ed] any remorse on October 31st going into November 1st." Sweeney objected to relevance. The prosecutor responded, "Well, I think in counsel's opening statement counsel argued that [Sweeney] felt ashamed about what he did."

If a defendant introduces a theory, thereby inviting a response from a prosecutor, a prosecutor's otherwise improper response may not deprive a defendant of his right to a fair trial. See *People v Jones*, 468 Mich 345, 353-354; 662 NW2d 376 (2003). In this case, Sweeney stated in his opening statement that he was "ashamed of how he had just treated" the complainant the evening of October 31 and morning of November 1. Therefore, Sweeney was not deprived of his right to a fair trial when the prosecutor attempted to introduce evidence in response to his opening statement. See *id*. Further, the trial court offered a curative instruction to cure any prejudice caused by the statement, instructing it to "disregard the statements of the prosecutor, the question to the witness, and the answer that was provided." See *McLaughlin*, 258 Mich App

at 647. Therefore, the trial court did not abuse its discretion in denying Sweeney's motion for a mistrial on this basis.

Third, Sweeney objects to the prosecutor referencing a comment from a police report when questioning the complainant. Specifically, the prosecutor stated, "I'm lookin' at the same [police] report, and I see where you did mention [your daughter]. Is that correct?" However, Sweeney had already elicited testimony from the complainant that she had mentioned her daughter to the trooper who wrote the report. Further, the trooper later testified that the complainant informed him who was present when the assault occurred, the complainant mentioned her daughter, and the trooper recorded the information in the report. Therefore, the prosecutor's statements were cumulative. See *Horn*, 279 Mich App at 36. Further, the trial court concluded that a jury instruction could cure any potential bias to Sweeney and instructed the jury that the "police report is not evidence," "questions by the prosecutor are not evidence," and "the prosecutor acted improperly in – in attempting to introduce facts into evidence without following the proper procedures, that being the police report," and therefore, the jury should "disregard the questions or any reference to any police report that was made" and not "consider it." See *id.*; *McLaughlin*, 258 Mich App at 647. Thus, the trial court did not abuse its discretion in denying Sweeney's motion for a mistrial on this basis.

## IV. OTHER ACTS EVIDENCE

Sweeney then argues that the trial court erred in admitting evidence of his other acts against the complainant and two of his ex-girlfriends, Robin White and Courtney Fortier, because the evidence should have been excluded under MRE 403. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *Unger*, 278 Mich App at 216.

Michigan Rule of Evidence 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence can be admitted "for other purposes." MRE 404(b)(1).

MCL 768.27b "expands the admissibility of domestic-violence other-acts evidence beyond the scope permitted by MRE 404(b)(1)," *People v Mack*, 493 Mich 1, 2; 825 NW2d 541 (2012), because "a full and complete picture of a defendant's history" helps a fact finder determine the likelihood that the defendant committed the charged offense, *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 372 (2011) (internal quotation marks and citation omitted). Specifically, MCL 768.27b provides:

> Except as provided in subsection (4)[2], in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the

---

[2] MCL 768.27b(4) provides that "[e]vidence of an act occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that admitting this evidence is in the interest of justice." Some of Sweeney's other acts against White occurred

defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403. [MCL 768.27b(1).]

MRE 403 states that the trial court may exclude relevant evidence if the evidence's probative value is substantially outweighed by the danger of unfair prejudice. Under MCL 768.27b, the propensity inference arising from the other acts evidence must be weighed in favor of the evidence's probative value. See *People v Watkins*, 491 Mich 450, 486-487; 818 NW2d 296 (2012) (analyzing MCL 768.27a); *Cameron*, 291 Mich App at 609-610 (noting the similar language of and policies behind MCL 768.27a and MCL 768.27b). Further, "a defendant's character and propensity to commit the charged offense is highly relevant because an individual with a substantial criminal history is more likely to have committed a crime than is an individual free of past criminal activity." *Watkins*, 491 Mich at 470 (internal quotations and citations omitted). The trial court cannot conclude that evidence is "overly prejudicial" "merely because it allows a jury to draw a propensity inference." See *id*. at 487. Further, the trial court can minimize evidence's prejudicial effect by instructing the jury that the issue is whether the defendant committed the charged offense. See *Cameron*, 291 Mich App at 612.

The prosecutor in Sweeney's case moved to admit other acts evidence from three witnesses pursuant to MRE 404(b) and MCL 768.27b. White testified that Sweeney called her names, yelled at her, threatened to hit her, and once swung her into a door. Fortier testified that Sweeney used to call her names, that Sweeney threatened to rape her, torture her, and kill her, and that Sweeney's actions scared her. The complainant testified that Sweeney had previously hit, slapped, and pushed her about 10 times, described specific instances, and described photographs of prior injuries. Additionally, the complainant testified that there were times when Sweeney wanted to have sex when she did not, so Sweeney yelled at her, called her names, and accused her of infidelity, which made her feel threatened. The trial court found that all of the testimony was admissible pursuant to MCL 768.27b. The trial court instructed the jury that it could only convict defendant if the evidence proved beyond a reasonable doubt that defendant committed the charged offenses. It could not convict defendant solely because it thought he was guilty of other bad conduct.

We conclude that the evidence had significant probative value. Sweeney did not admit to hitting the complainant to the extent that the complainant testified that he hit her or admit that he used force or coercion to engage in sexual penetration with her. The evidence provided a more full and complete picture of Sweeney's history and had a tendency to make it more probable that Sweeney assaulted and battered the complainant, see MCL 750.81(3), and used force or coercion to engage in sexual penetration with her, see MCL 750.520b(1)(f). Additionally, the evidence was not needlessly cumulative. See MRE 403. Each witness testified to distinct acts of domestic violence. Further, the jury instruction minimized the evidence's prejudicial effect. See *Cameron*, 291 Mich App at 612. Therefore, we conclude that the evidence was not substantially

---

more than 10 years before the charged offenses. However, the trial court found that admitting evidence of those acts was in the interest of justice. Sweeney does not challenge this finding on appeal.

more prejudicial than probative, and the trial court did not abuse its discretion in admitting the other acts evidence.

## V. EXPERT TESTIMONY

Sweeney argues that the trial court erred in admitting the expert testimony of Patricia Haist. We disagree.

We review a trial court's decision that a witness is qualified to give expert testimony and to admit expert testimony for an abuse of discretion. *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009).

MRE 702, which governs the admission of expert testimony, provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Accordingly, the trial court must make sure the expert testimony is both relevant and reliable. *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012) (opinion by KELLY, M.B., J.) Sweeney claims that the trial court erred in admitting Haist's expert testimony because it improperly vouched for the credibility of the complainant, and therefore, it was not helpful to the jury. Expert testimony is relevant when it "will assist the trier of fact to understand the evidence or to determine a fact in issue." MRE 702. This occurs when the testimony is relevant and "involve[s] a matter that is beyond the common understanding of the average juror." *Kowalski*, 492 Mich at 121. Specifically, experts may "explain other human behavior that is contrary to the average person's commonsense assumptions." *Id*. at 123. The Michigan Supreme Court has allowed expert testimony "to describe certain behavioral characteristics recognizable in victims of child sexual abuse" to "explain[] a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim," such as a victim's "common postincident behavior." *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995). Similarly, a prosecutor may offer expert testimony that "explain[s] the generalities or characteristics of [battered woman] syndrome . . . limited to a description of the uniqueness of a specific behavior brought out at trial" if "helpful in evaluating a witness' testimony." *People v Christel*, 449 Mich 578, 591-593; 537 NW2d 194 (1995) (internal quotations and citations omitted).

However, the Michigan Supreme Court has placed limits on expert testimony offered to explain the behavior of an abuse victim. An expert testifying to the behavior of a child sexual abuse victim may not offer the evidence "to demonstrate that the abuse occurred," "give an opinion on whether the complainant is being truthful," or give an opinion on "whether the defendant is guilty." *Peterson*, 450 Mich at 369. Similarly, an expert testifying about battered woman syndrome may not "opine whether the complainant is a battered woman," "testify that

defendant was a batterer or guilty of the instant charge," or "comment on the complainant's truthfulness." *Christel*, 449 Mich at 580.

When rebutting the charges against him at trial, Sweeney argued that the complainant's behavior on November 1, 2014, indicated that she wanted to have sex with him. Further, Sweeney highlighted the complainant's delay in reporting the alleged abuse. Haist testified that complainants who are sexually assaulted by non-strangers often engage in counterintuitive behavior. For example, it was not uncommon for sexual assault complainants to comply with the demands of the perpetrator or to ask the perpetrator to wear a condom knowing that she would be sexually assaulted. Haist further testified that it was less common for a complainant who was sexually assaulted by a non-stranger to report the assault than a complainant who was sexually assaulted by a stranger. Therefore, Haist's testimony assisted the jury in deciding facts in issue, see MRE 702, and discussed a matter beyond the common understanding of the average juror, see *Kowalski*, 492 Mich at 121. Further, Haist's testimony was properly limited to behaviors of sexual abuse victims generally. See *Id*. at 123; *Peterson*, 450 Mich at 373; *Christel*, 449 Mich at 591-593. Haist testified that she could not conclude whether criminal sexual conduct occurred in this case, could not conclude whether any person was a victim, and was not vouching for anyone's credibility.[3]

Sweeney also argues that Haist's testimony was not reliable because it was not scientifically valid, citing *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The *Daubert* Court, *id*. at 589-594, 590 n 8, discussed scientific testimony and concluded that many factors influence the scientific validity of the testimony, including: (1) whether the scientific theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error for the theory or technique, and (4) general acceptance of the theory or technique.

However, the Court in *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999), explained there are many types of expertise, and *Daubert* does not provide a "definitive checklist" of factors to be assessed. *Daubert*'s factors may or may not be relevant to evaluating the reliability of experience-based testimony. *Id*. at 151-152. Rather, the trial court "must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline'" and has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 149-152, quoting *Daubert*, 509 US at 592 (altered in *Kumho Tire Co, Ltd*).

Haist's testimony was based on technical, otherwise specialized, or experienced-based expertise. Haist testified that she had counseled hundreds of complainants of sexual assault, that she supervised therapists who counseled thousands more complainants, and that her testimony was based, in part, on her experience. Sweeney presented his argument to the trial court that

---

[3] The *Peterson* Court held that an expert could not testify to how often children lie about being sexually abused. 450 Mich at 376. Haist testified about the false report rate for sexual assault. However, Sweeney elicited this testimony. Therefore, he may not now argue that the testimony was erroneous. See *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995).

Haist's testimony was not reliable because she assumed that her clients were credible. Haist further testified that she based her testimony on research she discovered and information she learned in trainings. Therefore, the trial court's conclusion that Haist's testimony was reliable in light of her fully explained experience and training did not fall outside of the range of reasonable and principled outcomes.

Sweeney finally argues that Haist's testimony should have been excluded under MRE 403. Evidence is unfairly prejudicial when there is a danger that the jury will give marginally probative evidence undue or preemptive weight. *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003). Haist's testimony was not marginally probative. Sweeney argued that the complainant's behavior was indicative of consensual sex, and Haist provided the jury information it could use to assess the complainant's behavior. Therefore, the trial court did not abuse its discretion in failing to exclude the testimony under MRE 403.

## VI. SEQUESTRATION ORDER

Sweeney argues that three witnesses violated the trial court's sequestration order, and the trial court erred in not excluding their testimony as a sanction for the violation. We disagree.

We review a trial court's decision regarding the remedy for the violation of a sequestration order for an abuse of discretion. *People v Roberts*, 292 Mich App 492, 502-503; 808 NW2d 290 (2011).

A trial court may order that witnesses be excluded from the courtroom so that they cannot hear the testimony of other witnesses. MRE 615. However, "a sequestration order alone does not automatically put the witnesses on notice that they are not to discuss their testimony." *People v Davis*, 133 Mich App 707, 714; 350 NW2d 796 (1984). If a party would like the sequestration order "to caution the sequestered witnesses not to discuss the evidence," the party must specifically request the instruction. *Id*.

If a witness violates a sequestration order, the trial court may (1) hold the witness in contempt, (2) allow the witness to be cross-examined about the violation, or (3) preclude the witness from testifying. *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008).

In this case, Sweeney did not ask the trial court to order the witnesses not to discuss the evidence. The trial court gave no such instruction. Therefore, the prosecutor did not fail to properly instruct the witnesses that they could not discuss the evidence, and the witnesses could not have violated the sequestration order by discussing the evidence.

Rather, Sweeney asked the trial court to sequester the witness. The trial court did so, specifically ordering that a witness was not allowed to be in the courtroom until the witness testified. There is no evidence that any sequestered witness sat in the courtroom before he or she testified. Accordingly, no witness violated the sequestration order, and the trial court did not abuse its discretion in denying defendant's motion to exclude witness testimony.

## VII. OFFENSE VARIABLES (OV) 13 AND 19

Sweeney lastly argues that the trial court erred in scoring OVs 13 and 19. We disagree.

We review a trial court's factual findings used to score OVs for clear error. *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). Clear error exists when we are left with a definite and firm conviction that an error occurred. *Id*. We review de novo whether the facts are sufficient to satisfy the scoring conditions prescribed by statute. *Id*.

Sweeney argues that the trial court erred in scoring OV 13 at 25 points. Specifically, the trial court erred in finding that he previously engaged in third-degree criminal sexual conduct (CSC III), MCL 750.520d, with the complainant because complainant consented to the conduct.

OV 13 addresses a defendant's continuing pattern of criminal behavior. MCL 777.43(1). A trial court must count "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). A trial court must score 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c).

A person is guilty of CSC III if he or she uses "[f]orce or coercion" to engage in sexual penetration with another person. MCL 750.520d(1)(b). "[T]he existence of force or coercion is to be determined in light of all of the circumstances and is not limited to acts of physical violence." *People v Green*, 313 Mich App 526, 539; 884 NW2d 838 (2015) (internal quotations and citations omitted).

In this case, complainant testified there were occasions when Sweeney wanted to have sex but she did not. Sweeney knew that the complainant did not want to have sex, so he yelled at the complainant and called her names until she consented. The complainant testified that she was scared of Sweeney and consented because she feared, in part, that Sweeney was going to hit her. Based on this testimony, we do not have a definite and firm conviction that the trial court erred in finding that Sweeney used force or coercion to accomplish sexual penetration. Therefore, the trial court did not err in scoring 25 points for OV 13.

Sweeney also argues that the trial court erred in scoring 10 points for OV 19. Specifically, he argues that the trial court erred in finding that letters he wrote to the complainant were an attempt to interfere with the administration of justice because he never bribed, threatened, or intimidated the complainant.

A trial court must score 10 points for OV 19 if a defendant "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Interfering with or attempting to interfere with the administration of justice means "to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). A defendant can interfere with the administration of justice when he attempts to "diminish his victims' willingness and ability to obtain justice" by telling victims not to disclose his actions or he would go to jail. *Steele*, 283 Mich App at 492-493.

In this case, the trial court scored 10 points for OV 19 because Sweeney attempted to interfere with the administration of justice by sending letters to the complainant. The letters in the record show that Sweeney informed the complainant of the consequences of a CSC I conviction, asked the complainant if she wanted their child to grow up without a dad and with a

dad who was a registered sex offender, told the complainant that he loved her, told the complainant that she could help resolve the case positively and keep him out of prison, and asked the complainant to help him get home. Sweeney's letters can be viewed as an attempt to diminish the complainant's willingness to obtain justice for his crimes. See *id.* Therefore, we do not have a definite and firm conviction that the trial court erred in finding that Sweeney attempted to interfere with the administration of justice.

Finally, Sweeney argues that the scoring of OV 19 violated his First Amendment rights because his letters contained protected speech. Sweeney's argument is unpreserved because he did not raise this issue at sentencing, in a motion for resentencing, or in a motion to remand. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). Therefore, we review the issue for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

An appellant must support his arguments with citation to supporting authority. MCR 7.212(C)(7). Sweeney only cites *United States v Amaya*, 949 F Supp 2d 895 (ND Iowa, 2013), in support of his claim that OV 19 is subject to First Amendment analysis. This authority is not binding. *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013). We do not find it persuasive because it provided no legal explanation for why the First Amendment should prohibit a court from using a defendant's protected speech to score the applicable sentencing guidelines. In Michigan, a trial court must score the sentencing guidelines and consider the guidelines minimum sentence range when imposing a sentence. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). Sweeney provides no authority persuading us that the First Amendment allowed the trial court to fail to score OV 19. Therefore, we find no plain error.

We affirm.

/s/ Brock A. Swartzle
/s/ Henry William Saad
/s/ Peter D. O'Connell